1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              EASTERN DISTRICT OF CALIFORNIA

10

11   RACHAEL AKEY, an individual, and          No. 2:14-cv-02402-KJM-KJN
     N.D., a minor, by Rachael Akey as
12   Guardian ad litem, and RYAN
     CORNACCHIOLI, an individual, and
13   LINDA CLAYTON, an individual,             ORDER

14                    Plaintiffs,

15          v.

16   PLACER COUNTY, CALIFORNIA;
     SCOTT MYERS, in his official capacity
17   and as an individual; and GLORIA
     SUTTON, in her official capacity and as an
18   individual,

19                    Defendants.

20

21          Defendants Placer County, Scott Myers, and Gloria Sutton (collectively,

22   "defendants") move to dismiss plaintiffs' complaint under Federal Rule of Civil Procedure

23   12(b)(6).  Defs.' Mot., ECF No. 9.  Plaintiffs oppose the motion.  Opp'n, ECF No. 11.  The court

24   decides the matter without a hearing.  As explained below, the court GRANTS in part and

25   DENIES in part defendants' motion.  To the extent the court grants the motion, it does so with

26   leave to amend in the event plaintiffs are able to amend while complying with Federal Rule of

27   Civil Procedure 11.

28   /////

                                                 1

I.        PROCEDURAL BACKGROUND

On October 12, 2014, plaintiffs filed a complaint containing thirty-one causes of action for constitutional violations under 42 U.S.C § 1983 and related state law claims against defendants.  Compl., ECF No. 1.

- Under federal law, plaintiffs Akey, her minor son N.D. and her husband Cornacchioli allege violations of procedural due process against all defendants.  *Id*. ¶¶ 51–57, 63–74, 86–98, 108–114, 121–130, 164–194.  Akey and N.D. allege unlawful interference with the parent-child relationship against all defendants.  *Id*. ¶¶ 58–62, 75–85, 99–107, 115–120, 131–141, 153–163.

- Under state law, plaintiffs Akey and N.D. allege 1) violations of California Civil Code 52.1(A) ("Bane Act"); and 2) interference with parent-child relationship against defendants Sutton and Myers, a common law claim.  *Id*. ¶¶ 195–214, 220–239.

- All plaintiffs plead respondeat superior liability under California Government Code § 815.2(A) and/or 815.6 against defendant Placer County.  *Id*. ¶¶ 215–219, 220–244, 256–261, 272–277.

- Plaintiff Clayton individually pleads a claim titled "direct witness to intentional tort" against defendants Sutton and Myers.  *Id*. ¶¶ 262–271.

- Plaintiffs seek general damages of an estimated $900,000, including but not limited to a) attorneys' fees and costs incurred in connection with the previous court determination restoring Akey's custody (at least $75,000); b) loss of earning capacity (approximately $20,000); c) interest and reimbursable costs of borrowing the sums necessary to pay attorneys' fees (approximately $36,000); d) fees and costs for therapy for N.D.; e) damage to reputation; and f) severe emotional and mental distress caused by the loss of family relations.  Compl. ¶¶ 56, 62, 72, 83, 94, 105.  Only plaintiff Cornacchioli requests injunctive relief, in the form of removing his name from the California Department of Justice database as a "substantiated" child abuser, if his name listed.  *Id*. at 38, 40.

On October 23, 2014, plaintiff Akey filed an unopposed motion to be appointed guardian ad litem for plaintiff N.D., which the court granted.  ECF Nos. 8, 14.  Defendants moved to dismiss plaintiffs' complaint on November 5, 2014.  ECF No. 9.  Plaintiffs filed an opposition on December 5, 2014 (ECF No. 11), and defendants replied on December 12, 2014 (ECF No. 13).

II.    ALLEGATIONS OF THE COMPLAINT

The claims in this case arise out of defendants' investigation into the welfare of plaintiff N.D., a minor.  *See* Compl. at 1.  Plaintiff Akey is N.D.'s biological mother, and Cornacchioli is his stepfather.  *Id*.  Together, they resided at the home of Akey's mother, plaintiff Linda Clayton, during the relevant time period.  *Id*.  At the time of the relevant events, N.D. was three years old.  *Id*. ¶ 1.  Defendant Placer County operates the Placer County Family and Children Services agency (FCS), which implements local, state, and federal laws and regulations concerning children's welfare.  *Id*. ¶ 5.  Defendants Sutton and Myers are social workers employed by FCS.  *Id*. ¶ 6–7.  Social workers "conduct investigations into children's welfare" and "recommend and/or take action to ensure the safety of children residing in Placer County, California."  *Id*. ¶ 5.

On July 9, 2013, the Placer County Superior Court issued an order regarding N.D.'s custody.  *Id*. ¶ 11.  The order provided that Akey retained physical custody of N.D., but his biological father, Cameron Dupree, was to have unsupervised visits every other weekend and every Tuesday.  *Id*.

Akey claims that on September 6, 2013, when she picked up N.D., "Dupree was flushed and slurring his words."  *Id*. ¶ 16.  In accordance with the custody order, Akey requested a drug test for Dupree.  *Id*.  The results of the drug test are not reported in the complaint.  On September 7, 2013, Dupree requested a drug test for Akey, which came back negative.  *Id*. ¶ 17.  Akey took N.D. to school on Tuesday, September 10, 2013, where he was picked up by his father, Dupree, with whom he stayed that night.  *Id*. ¶ 19.  N.D. returned to his mother's custody when Akey picked him up from school on September 11, 2013.  On September 12, 2013, FCS received a report from N.D.'s school that N.D. told a teacher "Cornacchioli had chocked [sic] and

3

threatened to kill him."[1]  *Id*. ¶ 20; Defs.' Mot at 2.  Defendant Sutton was assigned to investigate the alleged incident.  *Id*.  Cornacchioli had been called away for military reserve activity and was away from home from September 6, 2013 until approximately 4:30 a.m. on September 10, 2013. *Id*. ¶ 15.

In her investigation, Sutton spoke with N.D.'s teacher, N.D., and Dupree.  During Sutton's phone interview with Dupree, he mentioned N.D. had made the choking comment to him on the evening of September 10, 2013, but he did not inform anyone.  *Id*. ¶ 21.  After this conversation, Sutton, with defendant Myers' approval, decided to remove N.D. from Akey's custody and give custody to Dupree.  *Id*. ¶ 22.  Dupree picked up N.D. from school on September 12, 2013, and retained custody until March 20, 2014.  *Id*.  During this time, Akey's two other children remained in her custody, living with Cornacchioli and Clayton.  *Id*. ¶ 23.

At approximately 1:02 p.m. on September 12, 2013, Sutton called Akey and informed her of the allegations.  *Id*. ¶ 23.  Akey pointed out there were no marks on N.D. and told Sutton Cornacchioli had not been in town from September 6, 2013 until September 10, 2013.  *Id*. ¶ 24.  Akey explained 1) "Cornacchioli had never harmed or threatened N.D;" 2) "Dupree had consistently made false allegations against her and Cornacchioli to gain full custody of N.D.;" 3) after an "extensive family court litigation and evidentiary trial," Akey had been awarded full custody; and 4) Dupree "had a serious drug problem and had prior drug arrests and convictions." *Id*. ¶ 24.  Sutton told Akey Dupree would be drug tested every day, and asked Akey to consent to the FCS order granting immediate and full custody to Dupree.  *Id*. ¶¶ 25–26.  Akey refused, and Sutton responded she would get a warrant to take custody of all of Akey's children.  *Id*.  Akey was "stunned, hurt, and confused" but refused to agree.  *Id*. ¶ 23.  Akey asked for Sutton's supervisor, and Sutton gave Akey Myers' name and number.  *Id*. ¶ 27.  Myers called Akey first, again asked for her consent, and explained when Akey would be interviewed in person and when the investigation would be complete.  *Id*. ¶¶ 27–28.  Akey again refused to give consent.  *Id*.

---

[1] Defendants allege N.D. stated this incident happened two days before the investigation. Defs.' Mot. at 2.  However, the FCS Report of the incident does not state when the alleged incident happened, only that N.D. complained to his teacher on September 11, 2013. Investigation Narrative, Ex. 2, ECF No. 1.

1  Regardless, N.D. remained with Dupree, and Akey's two other children remained with her.  *Id.* ¶
2  22.

3          Sutton interviewed Cornacchioli on September 17, 2013.  *Id.* ¶ 29.  He denied ever
4  choking, threatening, or harming N.D.  *Id.*  Cornacchioli explained Akey was responsible for
5  disciplining N.D., but that he had been involved with N.D. "longer and more deeply than his
6  biological father."  *Id.*  He also explained he was out of town during the alleged choking incident.
7  *Id.*

8          On or about September 20, 2013, defendants initiated a new family law proceeding
9  in Placer County Superior Court seeking to make permanent the full custody given to Dupree
10  after the alleged incident.  *Id.* ¶ 22.  During the proceeding, Sutton was asked if Dupree had been
11  drug tested every day as she had promised Akey, and she stated under oath that he had.  *Id.* ¶ 34.
12  No drug test results were ever produced.  *Id.*  Further, she admitted she had not conducted a home
13  assessment of Dupree, contrary to her representation in her report.  *Id.*  Sutton also admitted she
14  had not run a criminal history of Dupree prior to giving him custody.  *Id.*

15          Sutton and Myers wrote in the final FCS report dated September 25, 2013 that the
16  claims against Cornacchioli were "substantiated."  *Id.* ¶ 30.  On or about March 20, 2013, an
17  evidentiary hearing was held and the Placer County Superior Court issued a written order
18  including the following factual findings:  1) "no evidence was presented of [Akey's] general
19  neglect or failure to protect N.D." and 2) "no evidence was presented of stepfather, Ryan
20  Cornacchioli's physical abuse in terms of having strangled/choked N.D."  *Id.* ¶ 35.

21          On or about March 11, 2014, plaintiffs Akey and Cornacchioli filed a claim
22  against all defendants under California Government Code § 810 *et seq.* based upon the same
23  incidents and facts alleged in the complaint.  Placer County rejected the claims on April 16, 2014
24  and the Judicial Council of California rejected the claims on or about April 25, 2014.  *Id.* ¶ 36.
25  Plaintiffs timely filed this action within the prescribed six month time period under California
26  Government Codes §§ 905, 911.2 and 945.4.

27          Plaintiffs allege defendants Sutton and Myers failed to follow the applicable FCS
28  policies and procedures as set forth in the FCS manual.  *Id.* ¶ 37.  Specifically, they allege

5

1    defendants failed to:

2        1) make a timely, thorough and complete investigation that includes
         all of the safety and risk factors identified in the family and/or in
3        the course of the investigation;

4        2) have N.D. examined by a physician;

5        3) properly ascertain if N.D. could differentiate between a truth and
         a lie;
6

7        4) ask permission of Akey, who was the primary custodial parent at
         the time, to interview N.D.;

8        5) interview Akey in person;

9        6) meet and/or interview the other two Akey children to assess if
         Akey was taking good care of them;
10

11       7) complete a Structured Decision Making (SDM) Safety
         Assessment;

12       8) find or establish facts that constitute or show that N.D. was in
         danger of 'imminent physical harm';
13

14       9) devise a Safety Plan to address any safety concerns so that Akey
         would enjoy joint custody of N.D.; and

15       10) call county counsel to receive a final determination as to
         whether the legal threshold for immediate removal of N.D. was
16       met.

17   *Id.* ¶ 37.  Plaintiffs further allege defendant Sutton "acted outside the boundaries of the policies

18   and procedures of FCS and the California Department of Social Services by attempting to coerce

19   Akey to consent to the removal of her children, by filing an "unsubstantiated and/or false report

20   about Cornacchioli as a perpetrator of physical abuse" and by failing to present a reunification

21   plan. *Id.* ¶ 38.  Plaintiffs allege defendants Sutton and Myers failed to make a good faith

22   investigation, ignored relevant evidence in their investigation, fabricated evidence in their FCS

23   report, and suppressed exculpatory evidence by failing to disclose Dupree's drug test results, if

24   they exist, or the FCS Investigative Report.  *Id.* at 14–15.

25   III.    STANDARD

26          Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

27   dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

28   dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

                                              6

1   under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

2   1990).

3           Although a complaint need contain only "a short and plain statement of the claim

4   showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion

5   to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

6   claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

7   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

8   more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

9   conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting

10  *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

11  for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

12  its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the

13  interplay between the factual allegations of the complaint and the dispositive issues of law in the

14  action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

15          In making this context-specific evaluation, this court must construe the complaint

16  in the light most favorable to the plaintiff and accept as true the factual allegations of the

17  complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal

18  conclusion couched as a factual allegation,'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v.

19  Allain*, 478 U.S. 265, 286 (1986)), nor to "allegations that contradict matters properly subject to

20  judicial notice" or to material attached to or incorporated by reference into the complaint.

21  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001).

22  IV.    ANALYSIS

23          A.    Section 1983 (Claims 1-15)

24          As set forth in greater detail below, plaintiffs Akey, N.D. and Cornacchioli each

25  allege violations of 42 U.S.C. § 1983 against each defendant for violations of their procedural due

26  process rights, and N.D. and Akey allege unlawful interference with the parent-child relationship

27  under the Fourth and Fourteenth Amendments.  In relevant part, § 1983 provides: "Every person

28  who, under color of any statute, regulation, ordinance, custom, or usage, of any State . . .,

7

1  subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any

2  rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

3  injured in an action at law, suit in equity or other proper proceeding for redress . . . ." 42 U.S.C. §

4  1983.  While § 1983 is not itself a source of substantive rights, it provides a cause of action

5  against any person who, under color of state law, deprives an individual of federal constitutional

6  rights or limited federal statutory rights.  *Id*.; *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

7                  a.  Plaintiff Akey's Claims

8              Against defendants Sutton and Myers, Akey alleges deprivation of her

9  constitutional rights through their enforcement of a "safety plan," which removed N.D. from her

10  rightful, legally ordered custody.  Compl. at 19–25.  She further alleges the lack of a good faith

11  investigation, including the consideration of exculpatory evidence and the decision to remove

12  N.D. absent evidence demonstrating exigent circumstances.  *Id*.  She claims defendants Sutton

13  and Myers attempted to coerce her consent to the removal and change in custody of her child,

14  N.D., and unlawfully interfered with the parent child relationship in violation of the Fourth

15  Amendment's protection against unlawful seizure and the procedural due process clause of

16  Fourteenth Amendment.  *Id*. at 22-26.

17                  b.  Plaintiff N.D.'s Claims

18              Plaintiff N.D. alleges defendants deprived him of his constitutional rights to

19  notice, hearing, and a prior judicial determination before any changes were made to his custody

20  arrangement.  *Id*. at 28.  N.D. alleges there were no exigent circumstances justifying the

21  deprivation of this right.  *Id*.  As a result, plaintiff N.D. experienced unlawful deprivation of his

22  mother-son relationship in violation of the Fourth and Fourteenth Amendments.

23                  c.  Plaintiff Cornacchioli's Claims

24              Plaintiff Cornacchioli alleges violations of his due process rights regarding the

25  investigation of his alleged physical child abuse.  He alleges the lack of a good faith investigation,

26  the filing of a false report, and that the actions and omissions of defendants were the cause of his

27  deprivation of proper notice and a hearing as required by the procedural due process clause of the

28  Fourteenth Amendment.  *Id*. at 42.

1          d.  Defendants Myers and Sutton's Arguments

2          Defendants contend plaintiffs fail to state a claim under Section 1983 because:

3   1) plaintiff consented to the safety plan of allowing N.D. to stay with his father Dupree, so there

4   was no "removal;" 2) there was no constitutional deprivation because safety plans do not impose

5   obligations and are voluntary; and 3) Sutton and Myers are entitled to qualified immunity. Defs.'

6   Mot. at 4–9.

7       B.       Fourth Amendment

8          The Fourth Amendment protects children and families from warrantless removal

9   of a child from their home. *See Doe v. Lebbos*, 348 F.3d 820, 827 n.9 (9th Cir. 2003).  Absent

10   exigent circumstances, a warrant must be obtained to remove a child from the home. *Rogers v.*

11   *Cnty. of San Joaquin*, 487 F.3d 1288, 1291 (9th Cir. 2007).  Exigent circumstances are those

12   which establish a risk of imminent harm in the time it would take to get a warrant.  *See id.*

13   "Officials may remove a child from the custody of [the] parent without prior judicial

14   authorization only if the information they possess at the time of the seizure is such as provides

15   reasonable cause to believe that the child is in imminent danger of serious bodily injury and that

16   the scope of the intrusion is reasonably necessary to avert that specific injury. *Wallis v. Spencer*,

17   202 F.3d 1126, 1138 (9th Cir. 2000).

18          Ultimately, whether reasonable cause to believe exigent circumstances existed in a

19   given situation, "and the related questions, are all questions of fact to be determined by a jury."

20   *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs*., 237 F.3d 1101, 1108 (9th Cir. 2001)

21   (internal citations omitted).  In the meantime, the facts pled, which this court must accept as true

22   and view in the light most favorable to plaintiffs, state a lack of reasonable basis for the belief

23   N.D. was in imminent danger of serious bodily injury.  Defendants had no evidence of any history

24   of violence in the home, prior complaints of abuse, threats of continued violence, or marks on

25   N.D.  Neither the state court's evidentiary hearing originally granting custody to plaintiff Akey,

26   conducted while she was married to plaintiff Cornacchioli, nor the subsequent investigation

27   reinstating Akey as the custodial parent revealed any evidence of abuse.  Compl. at 15.  The

28   /////

1   complaint sufficiently states a constitutional deprivation as a result of the warrantless removal of

2   N.D. from Akey's custody.

3          The motion to dismiss plaintiffs' § 1983 claims, 3–6, 9–12, 14–15, on these

4   grounds is denied.

5          C.      Consent

6          Defendants argue the § 1983 claims should be dismissed because the safety plan

7   providing for the removal of N.D. from plaintiff's custody was voluntary.  They contend a

8   voluntary deprivation is no deprivation at all.  Defs.' Mot. at 4.  Plaintiffs respond consent was

9   never obtained, but rather defendants coerced Akey into submitting to the removal of N.D. from

10  her custody, which they already had accomplished, by threatening to take her other children.

11  Opp'n at 10.

12         The court considers "as a question of fact to be determined from the totality of all

13  the circumstances" whether consent to a seizure is "truly voluntary or was the product of duress

14  or coercion, express or implied."  *United States v. Articles of Drug Consisting of Following: An*

15  *Undetermined Quantity of 100-Capsule Bottles, Labeled in Part: Imported from New Zealand*

16  *Neptone Lyophilizied-Homogenized Mussels*, 568 F. Supp. 1182, 1185 (N.D. Cal. 1983).  The

17  Northern District of California examined the question of when safety plans of the sort at issue

18  here can be considered coercive in *Sangraal v. City & Cnty. of San Francisco*, 2013 WL

19  3187384, at *9 (N.D. Cal. June 21, 2013).  The court found that while the Ninth Circuit has not

20  yet provided a standard, other circuits have found safety plans to be coercive only "when a state

21  agency lacks legal authority to remove the child but coerces parents into agreeing to a safety plan

22  by threatening to remove the child anyway."  *Id*. (citing *Teets v. Cuyahoga County, Ohio*, 460

23  Fed. App'x 498, 503 (6th Cir. 2012); *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 482

24  (7th Cir. 2011); *Dupuy v. Samuels*, 465 F.3d 757, 759–63 (7th Cir. 2006)).

25         Here, plaintiffs allege Sutton threatened to remove Akey's other children, but had

26  no evidence Akey's other children were in danger of imminent harm.  N.D.'s report, which

27  prompted his removal, said only that Cornacchioli choked him, not his siblings.  Ex. 2 at 2,

28  Compl.  Assuming the facts as pled are true, Sutton did not have a legally justifiable reason for

                                                    10

1   removing Akey's other children from her home without a warrant; therefore threatening to

2   remove Akey's children lacked any legal authority.  As pled, Sutton's statement that she would

3   remove Akey's other children from her custody was coercive, designed to elicit Akey's

4   submission to the removal of N.D.; Akey did not voluntarily submit to the safety plan.

5         The motion to dismiss the 1983 claims, claims 3–6, 9–12, 14–15, on consent

6   grounds is denied.

7        D.    Qualified Immunity

8         In § 1983 actions, "qualified immunity protects government officials 'from

9   liability for civil damages insofar as their conduct does not violate clearly established statutory or

10   constitutional rights of which a reasonable person should have known.'"  *Pearson v. Callahan*,

11   555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining

12   the applicability of qualified immunity involves a two-step process: the court must decide 1)

13   whether the plaintiff has alleged or shown a violation of a constitutional right; and 2) whether the

14   right at issue was clearly established at the time of defendant's alleged misconduct. *Pearson*, 555

15   U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201–202, (2001)).  A court may "exercise its

16   sound discretion in deciding which of the two prongs of the qualified immunity analysis should

17   be addressed first in light of the circumstances in the particular case at hand." *Pearson v.*

18   *Callahan*, 555 U.S. 223 (2009) (also holding that a court may assume the existence of a

19   constitutional violation under the first inquiry for purposes of the qualified immunity analysis).

20         A social worker is entitled to qualified immunity when "it would not have been

21   clear to a reasonable social worker in the situation . . . that her conduct was unlawful under

22   clearly established law." *Springer v. Placer Cnty*., 338 F. App'x 587, 589 (9th Cir. 2009).  In

23   *Springer*, the court found qualified immunity when considering that the social worker "directly

24   observ[ing] the red marks on [the child's] nose, [the child] told [the social worker] that his father

25   hit him, slapped him, pinched his nose hard, and spanked him; that his father sometimes became

26   angry when he was drunk; and that he was afraid to go home because his father might hurt him."

27   *See also Barnes v. Cnty. of Placer*, 386 F. App'x 633, 635–36 (9th Cir. 2010) (affirming qualified

28   immunity where procedures were not clear, so social worker could have believed conduct was

1    lawful).  In *Rogers,* 487 F.3d at 1297, however, the court reversed a finding of qualified immunity

2    "because a reasonable social worker would have understood that the children faced no imminent

3    risk of serious bodily harm, as required by clearly established law."  In that case, the court found

4    no exigency despite the evident malnourishment and disorderly conditions in the home because

5    the social worker conceded she could have obtained a warrant within hours, and there was no risk

6    of a worsening of physical conditions in that short time.  *Id.* at 1295.  In *Anderson-Francois v.*

7    *Cnty. of Sonoma*, 415 F. App'x 6, 9 (9th Cir. 2011), the court affirmed a denial of qualified

8    immunity where an officer "could have obtained a warrant within a few hours, [and] did not have

9    reasonable cause to believe that the children were in imminent danger."

10            Defendants cite to *Stoot v. City of Everett*, 582 F.3d 910, 922 (9th Cir. 2009), in

11   support of their argument that qualified immunity is appropriate given that N.D.'s uncorroborated

12   account of abuse was the sole basis establishing probable cause.  In *Stoot*, the court affirmed a

13   grant of qualified immunity to a police officer who seized a suspect, because "none of the cases

14   cited by the Stoots put [the officer] directly on notice that his decision to rely on [the minor's]

15   statements, without any corroboration, was unlawful."  *Id.* at 922.  *Stoot,* however, is

16   distinguishable because it focuses on the officer's decision to seize the alleged abuser, not to

17   remove a child from a custodial parent with no evidence of that parent's abuse and no physicial

18   evidence of any abuse by another.

19             Because a factual record of exactly what N.D. said and the circumstances

20   surrounding his removal has not yet been fully developed, a determination of whether qualified

21   immunity is applicable is at least premature.  *See Arce v. Cnty. of Los Angeles*, 211 Cal. App. 4th

22   1455, 1482 (2012) (qualified immunity cannot be decided "based solely on the allegations in the

23   complaint").

24            The motion to dismiss claims 3-6, 9-12, and 14-15 against defendants Sutton and

25   Myers on the basis of qualified immunity is denied.

26        E.    Respondeat Superior/*Monell* Claims (Claims 1, 2, 7, 8, and 13)

27            All plaintiffs allege Placer County lacked "a clear and appropriate policy, practice,

28   or procedure regarding the removal of a child from the custody of a parent without prior judicial

12

1    approval . . . ." Compl. at 16.  Plaintiffs contend such "deliberate indifference" to the potential

2    violations of the constitutional rights of those involved in child protection investigations violates

3    the procedural due process prong of the Fourteenth Amendment.  *Id.*  Plaintiffs argue that

4    regardless of whether defendants were the "physical means of the change in custody," the

5    causation prong is satisfied because they "made the decision that caused the removal of custody

6    from Akey."  Opp'n at 25.

7           Defendants respond Placer County cannot be liable for a constitutional deprivation

8    based on respondeat superior because plaintiffs do not allege facts satisfying the causation

9    requirement.  Defs.' Mot. at 11.  Defendants contend plaintiff Akey's loss of custody was caused

10   by her agreed-upon "safety plan," not an "alleged absence of a policy, practice, or procedure."

11   *Id.*  In the alternative, defendants move to dismiss plaintiffs' *Monell* claims on the ground that

12   plaintiffs have failed to sufficiently allege facts of an underlying constitutional violation.  *Id.* at

13   12.

14          Municipalities may be held liable as "persons" under 42 U.S.C. § 1983, but not for

15   the unconstitutional acts of their employees based solely on a respondeat superior theory.  *Monell*,

16   436 U.S. at 691.  Rather, a plaintiff seeking to impose liability on a municipality under § 1983 is

17   required "to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  *Bd. of*

18   *Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694; *Pembaur v.*

19   *Cincinnati*, 475 U.S. 469, 480–81 (1986); and *City of Canton v. Harris*, 489 U.S. 378, 389

20   (1989)).

21          To sufficiently plead a *Monell* claim and withstand a Rule 12(b)(6) motion to

22   dismiss, allegations in a complaint "may not simply recite the elements of a cause of action, but

23   must contain sufficient allegations of underlying facts to give fair notice and to enable the

24   opposing party to defend itself effectively."  *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d

25   631, 637 (9th Cir. 2012) (quotation omitted).  A *Monell* claim may be stated under three theories

26   of municipal liability: (1) when official policies or established customs inflict a constitutional

27   injury; (2) when omissions or failures to act amount to a local government policy of deliberate

28   indifference to constitutional rights; or (3) when a local government official with final policy-

1    making authority ratifies a subordinate's unconstitutional conduct.  *See Clouthier v. Cnty. of*

2    *Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010).  Official municipal policy includes "the

3    decisions of a government's lawmakers, the acts of its policymaking officials, and practices so

4    persistent and widespread as to practically have the force of law."  *Monell*, 436 U.S. at 694

5    (citations omitted).  Such a policy or practice must be a "moving force behind a violation of

6    constitutional rights."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing

7    *Monell*, 436 U.S. at 694).

8                    "A *Monell* claim, whether for a municipal policy or for failure to train, generally

9    cannot be premised on a single unconstitutional incident."  *Sangraal*, 2013 WL 3187384, at *15

10   (citations omitted).  Here, plaintiffs have not alleged any other instances where social workers

11   removed children from lawful parental custody without a warrant.  A lack of policies and

12   practices for determining whether warrantless removal is justified cannot sustain a *Monell* claim

13   without a showing those policies and procedures, or lack thereof, lead systematically to

14   constitutional violations.  *Mikich v. Cnty. of San Francisco*, 2013 WL 897207, at *17 (N.D. Cal.

15   Mar. 8, 2013) (dismissing a *Monell* claim under similar circumstances).  Plaintiffs' allegations are

16   insufficient to state a *Monell* claim against defendant Placer County.  The defendants' motion to

17   dismiss plaintiffs' *Monell* claims, claims 1-2, 7-8, and 13,  is granted with leave to amend.

18           F.      Bane Act (Claims 16, 17, 21, 22)

19                   Plaintiffs Akey and N.D. allege Myers and Sutton coerced Akey to consent to the

20   removal of N.D. from her rightful custody by threatening to remove all of Akey's children from

21   her. Compl. at 44–45.  This alleged coercion interfered with Akey's and N.D.'s procedural due

22   process rights and substantive rights to a familial relationship.  *Id.* at 44–45, 51–52.  Defendants

23   seek dismissal of plaintiffs' Bane Act claims because they have not pled any coercive activity;

24   they say threatening to take lawful action by removing N.D. from imminent danger is not a

25   coercive act.  Defs.' Mot. at 13.  Plaintiffs respond whether the threat was "lawful action" is a

26   question for the jury.  Opp'n at 10.

27                   The Bane Act, codified in the California Civil Code, authorizes individual civil

28   actions for damages and injunctive relief by individuals whose federal or state rights have been

                                                     14

1    interfered with by threats, intimidation, or coercion.  Cal. Civ. Code § 52.1.  Section 52.1 "does

2    not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or

3    coercion that interferes with a constitutional or statutory right."  *Venegas v. Cnty. of L.A*, 32 Cal.

4    4th 820, 843 (2004).  After a recent California Court of Appeal decision, S*hoyoye v. County of*

5    *Los Angeles*, 203 Cal. App. 4th 947 (2012), federal district courts have reached different results in

6    trying to answer the question whether a plaintiff bringing a Bane Act claim must introduce

7    independent evidence showing threats, intimidation, or coercion, in addition to showing a

8    constitutional violation.  *See Davis v. City of San Jose*, ___ F.Supp.3d ___, No. 14-2035, 2014

9    WL 4772668, *6 (N.D. Cal. Sept. 24, 2014) (collecting cases).  One group has concluded

10   intentional conduct or excessive force claims suffice alone.  *Id*.  The other has held "something

11   more than an inherently coercive violation is required to state a claim under the Bane Act."  *Id*.

12   At least in the Fourth Amendment context, this court has sided with the first camp.  *See Johnson*

13   *v. Shasta Cnty*., No. 14-01338, 2015 WL 75245, at *13 (E.D. Cal. Jan. 6, 2015) ("'Where Fourth

14   Amendment unreasonable seizure or excessive force claims are raised and intentional conduct is

15   at issue, there is no need for a plaintiff to allege a showing of coercion independent from the

16   coercion inherent in the seizure or use of force.'" (quoting *Dillman v. Tuolumne Cnty*., No. 13-

17   00404, 2013 WL 1907379, at *21 (E.D. Cal. May 7, 2013)).

18             As discussed above, plaintiffs have pled facts indicating Akey's submission to the

19   safety plan for N.D. was induced by a threat to remove Akey's children from her custody.  A

20   court considering a claim under the Bane Act asks whether a reasonable person "standing in the

21   shoes of the plaintiff, would have been intimidated by the actions of the defendants . . . ."

22   *Winarto v. Toshiba Am. Electronics Components, Inc*., 274 F.3d 1276, 1289 (9th Cir. 2001).

23   Akey's claim, as pled, states a Bane Act claim.  However, there are no facts indicating plaintiff

24   N.D. experienced any coercion, threats, or was induced to consent by defendants.  *Cf. McCue v.*

25   *S. Fork Union Elementary Sch*., 766 F. Supp. 2d 1003, 1011 (E.D. Cal. 2011) (dismissing Bane

26   Act claim where no allegation of an act or threat of violence against the removed minor).  The

27   motion to dismiss plaintiffs' Bane Act claim, claims 16, 17, 21 and 22, is granted as to plaintiff

28   N.D. with leave to amend, if plaintiff is able, and denied as to plaintiff Akey.

G.      Remaining State Law Claims (Claims 18, 19, 23, 24, 26, 27)

Defendants contend plaintiffs' state law claims for interference with family relationships must be dismissed because social workers have "quasi-judicial immunity." Defs.' Mot. at 13. Further, they argue plaintiffs have not shown defendants did not engage in a good faith investigation justifying removal. *Id.*

The California Government Code provides, in relevant part, "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2. At the same time, it precludes social workers from receiving certain state statutory immunities if the social worker maliciously commits perjury, fabricates evidence, fails to disclose known exculpatory evidence, or obtains testimony by duress, fraud, or undue influence. Cal. Gov't Code § 820.21.

The Ninth Circuit has recognized that Government Code section 820.2 "applies to county social workers engaged in investigating allegations of child abuse." *Wallis*, 202 F.3d at 1144. "[I]mmunity provides complete protection for the decision to investigate . . . and for actions necessary to make a meaningful investigation[, but] does not extend[ ] to non-discretionary actions or to at least some intentional torts committed in the course of making the investigation, such as battery and false imprisonment." *Olvera v. Cnty. of Sacramento*, 932 F. Supp. 2d 1123, 1177 (E.D. Cal. 2013) (citations omitted, alterations in original). The Third District Court of Appeal has held that section 820.2 immunized a social worker from a claim that the social worker performed an "inadequate investigation." *Ortega v. Sacramento Cnty. Dep't of Health & Human Servs*., 161 Cal. App. 4th 713, 732 (2008). In *Ortega*, the arrest of the child's father mandated the social worker perform a particular investigation, but the social worker failed to gather information from the enumerated sources in the CPS handbook, and defendants conceded that the social workers' investigation was "lousy" and ultimately resulted in the social worker making the wrong determination about returning the child to the custody of her father. *Id.* at 728, 731. The court nonetheless concluded the social worker was immune under section 820.2 because she "made a considered decision balancing risks and advantages," even though she did so

16

1   based on "woefully inadequate information." *Id.*; *see also Jacqueline T. v. Alameda Cnty. Child*

2   *Protective Servs.*, 155 Cal. App. 4th 456 (1st Dist. 2007) (granting immunity under sections 820.2

3   and 821.6 for the "failure to conduct a reasonable and diligent investigation"); *Guzman v. County*

4   *of Alameda*, 2010 WL 3702652, at *8 (N.D. Cal. Sept. 10, 2010) ("[C]ourts have recognized

5   immunity for social workers in their investigations of child abuse complaints."); *Clarke v. Upton*,

6   2008 WL 2025079, at *17 (E.D. Cal. May 9, 2008) ("The immunity set forth in Section 820.2

7   applies to claims of negligent and intentional conduct alleged in connection with a child abuse

8   investigation . . . .").

9          Assuming plaintiffs' allegations are true, defendant Sutton did not thoroughly

10   investigate the safety and risk factors associated with N.D.'s family members, including Dupree's

11   documented drug issues; did not interview in person plaintiff Akey, or obtain Akey's consent to

12   interview N.D.; and did not seek a warrant for N.D.'s removal.  Plaintiffs do not allege any action

13   that rises to the level of malice justifying a waiver of immunity.  There are no facts indicating

14   defendant Sutton maliciously committed perjury, tampered with or fabricated evidence, or

15   behaved fraudulently in her investigation such that she is exempted from California's qualified

16   immunity statute.  A social worker's allegedly inadequate investigation is still entitled to

17   immunity under California Government Code § 820.2.

18          The motion to dismiss the state law claims, claims 18, 19, 23, 24, 26, and 27,

19   against defendants is granted with leave to amend.

20          H.      Plaintiff Clayton's Claims (Claims 29, 30, and 31)

21          Defendants contend that because Clayton's state law claims are derivative of

22   plaintiff Akey's claims, they should also be dismissed.   Defs.' Mot. at 15.  Clayton states a claim

23   for "direct witness to intentional tort" against defendants Sutton and Myers.  In the complaint, she

24   alleges she "personally observed the shock, hurt, confusion, and humiliation of her daughter,"

25   when her daughter lost custody of N.D.  Compl. at 63.  The complaint does not state any statutory

26   or common law basis for the cause of action labeled simply "direct witness to intentional tort,"

27   and the court is unable to locate any basis for such a claim in state or federal law.

28          Accordingly, Clayton's claims are dismissed with leave to amend.

V.      CONCLUSION

             For the foregoing reasons, the court orders as follows:

1.      Claims 1, 2, 7, 8, and 13 (*Monell* claims against defendant Placer County) are DISMISSED with leave to amend;

2.      Plaintiffs' state law claims 18, 19, 23, 24, 26, 27 are DISMISSED with leave to amend;

3.      Plaintiff N.D.'s Bane Act claims 21 and 22 are DISMISSED with leave to amend;

4.      Plaintiff Clayton's claims 29, 30 are DISMISSED with leave to amend;

5.      The motion is DENIED as to all other claims, and those claims as currently pled may be included in an amended complaint; and

6.      Plaintiffs are directed to file a first amended complaint consistent with this order within twenty-one (21) days.

             IT IS SO ORDERED.

DATED:  March 20, 2015.

_____
UNITED STATES DISTRICT JUDGE