UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RACHEL AKEY, et al.,

        Plaintiffs,

v.

PLACER COUNTY, et al.,

        Defendants.

No.: 2:14-cv-2402-KJM-KJN

ORDER

        This matter is before the court on defendants' motion to dismiss and for reconsideration of the court's previous order. Defs.' Mot., ECF No. 21. Plaintiffs oppose the motion, Opp'n, ECF No. 22, and defendants have replied, ECF No. 23. This matter is decided without a hearing. As explained below, the court GRANTS IN PART the motion to dismiss and DENIES the motion for reconsideration.

I.      BACKGROUND

    A.    Procedural Background

        Plaintiffs' original complaint, filed on October 12, 2014, contained thirty-one claims for constitutional violations under 42 U.S.C. § 1983 and related state law claims. Compl., ECF No. 1. Defendants moved to dismiss the complaint and the court granted the motion in part,

1

dismissing fifteen claims with leave to amend, including the due process *Monell* claims against defendant Placer County (1-2, 7-8, 13), the common law interference with parent-child relationship claims (18-19, 23-24, 26-27), the California Bane Act claims brought by N.D. (21-22), and the "direct witness to intentional tort" claims brought by Clayton (29-30). Order, ECF No. 18.

Plaintiffs have filed a first amended complaint, repleading several previously dismissed claims. First Am. Compl. (FAC), ECF No. 20. The operative complaint includes *Monell* claims against defendant Placer County (1-2, 7-8, 13), procedural due process and unlawful interference claims under 42 U.S.C. § 1983 (3-6, 9-12, 14-15); Bane Act claims under California Civil Code section 52.1 (16-17); common law interference with parent-child relationship claims (18-19, 21-22); interference with constitutional rights claims (24-25); respondeat superior liability under California Government Code sections 815.2(a) and/or 815.6 (20, 23, 26, 31); and new claims for intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") (27-30). *Id.* Defendants now move to dismiss, arguing the *Monell* claims (1, 2, 7, 8, 13) and the newly pled NIED/IIED claims (27-30) fail to state a claim and that all individual state law claims (claims 18-19, 21-22, 24-25, 27-30) are barred by defendants' immunity under California Government Code sections 821.6, 820.2 and 820.21. Additionally, they argue defendants are immune from section 1983 liability and seek reconsideration of this court's previous order. ECF No. 21.[1]

B.   Facts

The court briefly reviews the allegations of the first amended complaint. ECF No. 20. Plaintiff Akey, her minor son N.D., her mother Linda Clayton, and her husband Ryan Cornacchioli bring this action against defendants for their investigation of Cornacchioli's alleged abuse of N.D. *See* FAC at 1. At the time of the investigation, plaintiffs resided together at

---

[1] Defendants do not explicitly address the Bane Act, interference with constitutional rights, or respondeat superior liability claims (claims 16, 17, 20, 23, 24, 25, 26, 31) in their motion. To the extent they believe state law immunity applies to those claims, the court's finding below that the alleged conduct does not qualify for the immunity exception applies with equal force.

2

Clayton's home. *Id.* Defendant Placer County operates the Placer County Family and Children Services agency (FCS), which implements local, state, and federal laws and regulations concerning children's welfare. *Id.* ¶ 5. Defendants Sutton and Myers are social workers employed by FCS. *Id.* ¶¶ 6-7.

On July 9, 2013, the Placer County Superior Court issued an order granting Akey primary custody of N.D., and granting N.D.'s biological father, Cameron Dupree, unsupervised visits every other weekend and every Tuesday. *Id.* ¶ 11. On September 11, 2013, FCS received a report from N.D.'s school that N.D. had told a teacher "Cornacchioli had chocked [sic] and threatened to kill him." *Id.* ¶ 20. Defendant Sutton was assigned to investigate the alleged incident. *Id.*

During defendant Sutton's investigation, she telephoned Akey on September 12, 2013. *Id.* ¶ 23. Akey put her phone on speaker, allowing plaintiffs Cornacchioli and Clayton to hear the entire conversation. *Id.* Sutton told Akey of the allegations, which Akey denied. *Id.* ¶ 24. Akey explained that Dupree had consistently made false allegations to gain full custody and had a drug problem, with prior arrests and convictions. *Id.* She stated that a "very recent and extensive family court litigation and evidentiary trial" had awarded Akey full custody, and that Cornacchioli had been away on military duty until the early morning of September 10, 2013. *Id.* ¶ 15. Sutton asked Akey to consent to Dupree's taking custody of N.D.; when told of Dupree's drug history, Sutton told Akey that Dupree would be drug tested every day. *Id.* ¶ 23. Akey refused, and Sutton responded she would obtain a warrant to take custody of all of Akey's children. *Id.* Akey was "stunned, hurt, and confused," but refused to consent. *Id.* Akey asked for Sutton's supervisor, and Sutton gave Akey defendant Myers' name and number. *Id.* ¶ 27. Myers called Akey first, again asked for her consent, and explained when Akey would be interviewed in person and when the investigation would be complete. *Id.* ¶¶ 27-28. Myers repeated Sutton's statement that the FSC had decided to give immediate custody to Dupree, and that if she did not consent to the change in custody, they would obtain a warrant and take all of her children away from her. *Id.* Akey again refused to give consent. *Id.* Clayton and Cornacchioli could hear this conversation as well. *Id.*

3

Despite Akey's refusal, Sutton directed Dupree to pick N.D. up from school that day. *Id.* ¶ 22. Dupree retained custody until March 2014, when the Placer County Superior Court restored custody to Akey after finding no evidence of neglect, failure, or abuse by Akey or Cornacchioli. *Id.* ¶ 35. Akey's other children were ages one and two at the time, and the court infers they remained in her custody for the duration of the investigation. *Id.* ¶ 1.

Regarding the investigation itself, on or about September 25, 2013, Sutton and Myers prepared a "Child Abuse Or Severe Neglect Indexing Form" and a "Notice of Child Abuse Central Indexing" that reported a "substantiated" claim of physical abuse by Cornacchioli. *Id.* ¶¶ 30, 31. Cornacchioli alleges that these forms were submitted to the State of California the same day. *Id.* Plaintiffs allege that by law, Sutton, Myers and the FCS were obligated to send these forms promptly to Cornacchioli to trigger a thirty-day period for Cornacchioli to challenge them with a grievance hearing. *Id.* ¶ 32. Cornacchioli alleges Sutton, Myers and FCS failed to provide him that copy. *Id.*

During the subsequent custody proceeding, Sutton was asked at deposition if Dupree had been drug tested every day as Sutton had promised Akey in their phone conversation. *Id.* ¶ 34. Sutton answered under oath that Dupree had been tested. *Id.* However, when asked why the drug test results were not in the FCS Report, Sutton said that "maybe I forgot to put it in." *Id.* No test results for Dupree have ever been produced. *Id.* ¶ 48. Further, Sutton admitted during her deposition that Dupree had told her on September 12, 2013 that he had only been off "Norcos," a common name for a mixture of hydrocodone and acetaminophen, for three months. *Id.* ¶ 34. Sutton also admitted that, contrary to the FCS Report describing Sutton's assessment visit of Dupree's home, Sutton had never conducted a home inspection. *Id.* ¶ 47. Finally, Sutton admitted in the deposition that she had not run a criminal history on Dupree prior to taking N.D. from Akey's custody. *Id.*

Plaintiffs filed suit after Akey regained custody of N.D. They allege defendants Sutton and Myers failed to make a good faith investigation, ignored relevant evidence, fabricated evidence in their FCS report, and suppressed exculpatory evidence by failing to disclose Dupree's drug test results, if they exist, or the FCS Investigative Report. *Id.* ¶¶ 13-15.

4

II.  LEGAL STANDARD

   A.  Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to survive a motion to dismiss, this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). This rule does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice," or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

   B.  Motion for Reconsideration

Reconsideration is appropriate upon a change in controlling law, when new evidence is available, or it is necessary to correct clear error or prevent manifest injustice. *Cachil*

5

*Dehe Band of Wintun Indians v. California*, 649 F. Supp. 2d 1063, 1069 (E.D. Cal. 2009) (citing *School Dist. No. 1J Multnomah Cnty. v. AC & S Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)).  A party should "not use a motion for reconsideration to raise arguments or present new evidence for the first time when it could reasonably have been raised earlier in the litigation," *id.*, nor should the party "ask the court to rethink matters already decided." *American Rivers v. NOAA Fisheries*, No. CV–04–00061, 2006 WL 1983178, at *2 (D. Or. July14, 2006) (citing *Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 582 (D. Ariz. 2003)).

Under Local Rule 230(j), the party moving for reconsideration must set forth:

> (1) when and to what [j]udge . . . the prior motion was made; (2) what ruling . . . was made thereon; (3) what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion; and (4) why the facts or circumstances were not shown at the time of the prior motion.

L.R. 230(j).

"To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Knight v. Rios*, No. 09–cv–00823, 2010 WL 5200906, at *2 (E.D. Cal. Dec. 15, 2010).  Because they "are generally disfavored," *Am. Rivers*, 2006 WL 1983178, at *2 (citing *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991)), such motions are properly granted only in "highly unusual circumstances," *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).

III.   ANALYSIS

    A.   *Monell* Claims (Claims 1-2, 7-8, 13)

Plaintiffs Akey and N.D. assert essentially identical *Monell* claims (1-2, 7-8) against Placer County.  Plaintiffs allege the County has repeatedly failed to follow applicable procedures, FAC ¶ 53, failed to adequately train or supervise employees about its policies, practices, and procedures, *id.* ¶ 61, and that these failures amount to "deliberate indifference," *id.* ¶ 60. Specifically, plaintiffs allege a failure to train "about what constitutes exigent circumstances . . . that permit the removal of a child from the custody of a parent without the procedural due process requirement for a hearing and prior judicial approval." *Id.* ¶ 54.  Plaintiff Cornacchioli asserts his *Monell* claim (claim 13) based on 1) defendants' failure to follow the

6

1  established policy, practice and procedure for reporting suspected abusers to the California

2  Department of Justice; and 2) Sutton's failure to conduct a good faith investigation in compliance

3  with established FCS policies and procedures. *Id*. at 39-41.

4  Defendants argue the first amended complaint does not sufficiently allege *Monell*

5  claims against Placer County because it lacks factual allegations detailing that a regular practice

6  or custom existed. Defs.' Mot. at 9.

7  To sufficiently plead a *Monell* claim and withstand a Rule 12(b)(6) motion to

8  dismiss, allegations in a complaint "may not simply recite the elements of a cause of action, but

9  must contain sufficient allegations of underlying facts to give fair notice and to enable the

10 opposing party to defend itself effectively." *A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d

11 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

12 Plaintiffs Akey and N.D. state their *Monell* claims under both a theory of "failure to train" and

13 "failure to enforce," Opp'n at 10-13, and Cornacchioli states his under a failure to enforce theory,

14 seeking injunctive relief and punitive damages. FAC at 47–48.

15     1.  Pleading Failure to Train (Claims 1, 2, 7, 8)

16 A plaintiff "must demonstrate a 'conscious' or 'deliberate' choice on the part of a

17 municipality in order to ultimately prevail on a failure to train claim." *Flores v. Cnty. of Los*

18 *Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (citing *Price v. Sery*, 513 F.3d 962, 973 (9th Cir.

19 2008)). Under this standard, a plaintiff must allege facts showing that the County "disregarded

20 the known or obvious consequence that a particular omission in [its] training program would

21 cause [municipal] employees to violate citizens' constitutional rights." *Id*. (citations and internal

22 quotations omitted, alteration in original). A "pattern of similar constitutional violations by

23 untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of

24 failure to train," though there exists a "narrow range of circumstances [in which] a pattern of

25 similar violations might not be necessary to show deliberate indifference." *Connick v. Thompson*,

26 563 U.S. 51, 131 S. Ct. 1350, 1360 (2011). This "narrow range of circumstances" may exist only

27 when (1) "the need for more or different training is so obvious"; and (2) the inadequacy of

28 /////

training is "so likely to result in the violation of constitutional rights." *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989).

### 2. Pleading Failure to Enforce (Claims 1, 2, 7, 8, 13)

To impose liability against a county for its inaction when enforcement is called for, a plaintiff must show (1) that a county employee violated the plaintiff's constitutional rights; (2) that the county has customs or policies that amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of plaintiff's constitutional rights. *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006).

### 3. Discussion

Plaintiffs argue they have alleged with specificity, based upon Placer County's own documents, that Placer County had pertinent policies, but failed to train its employees in these policies or was deliberately indifferent to them. Opp'n at 10. As noted, both theories require a plaintiff to plead some pattern, custom, or general practice. Plaintiff's allegations show only that Placer County had policies and practices that were not followed with respect to the removal of N.D. and the reporting of Cornacchioli to the California Department of Justice. FAC at 12–14. Plaintiffs do not allege a pattern of similar behavior other than to allege that plaintiffs are "informed and believe[], and on that basis allege[], that Placer County has also failed to adequately train or supervise its employees about its policies, practices, or procedures." FAC ¶ 61. Plaintiffs also have not sufficiently alleged a failure to train because "isolated incidents of criminal wrongdoing" by one actor are not sufficient to put a defendant on "notice that a course of training is deficient in a particular respect," or that the absence of such a course "will cause violations of constitutional rights." *Flores*, 758 F.3d at 1159; *see also Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921, 931–32 (9th Cir. 2001). Courts have dismissed *Monell* claims where there is no allegation of a pattern of constitutional violations, or where the allegations do not show that more training would have prevented the violation. *See, e.g.*, *Hanna ex rel. Henderson v. Cnty. of Fresno*, No. 1:14-CV-00142, 2014 WL 6685986, at *13 (E.D. Cal. Nov. 26, 2014); *E. G. by & through Lepe v. Maldonado*, No. 5:14-CV-01053, 2014 WL 5472654, at *9 (N.D. Cal. Oct. 28, 2014).

Similarly, plaintiffs do not allege a claim under a failure to enforce theory because there are no allegations of a common practice or custom of failing to adhere to the policies and procedures, but only a conclusory statement that "similar conduct has occurred on multiple occasions." *See* FAC ¶¶ 53, 61.

In sum, the allegations lack specificity and are insufficient to put defendants on notice so that they might appropriately investigate and respond. Plaintiffs have not sufficiently pleaded facts giving rise to a *Monell* claim under either theory. Because plaintiffs indicate that they can these factual deficiencies, Opp'n at 12, the claims are dismissed with leave to amend.

B.     Individual State Law Claims (claims 18-19, 21-22, 24-25, 27-30)

Defendants argue these allegations fail to state claims for relief under state law because the individual defendants are immune under California Government Code sections 821.6, 820.2 and 820.21. Defs.' Mot. at 10. Plaintiffs argue immunity is waived because they have sufficiently alleged that defendants fabricated and suppressed relevant evidence, and should be permitted to conduct discovery to further support these allegations. Opp'n at 15. Defendants further argue that plaintiffs have not sufficiently pled the fabrication of any material evidence, so no fraud exception to immunity applies. Defs.' Mot. at 13.

1. Immunity

"A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6. However, immunity is not available for any employee who commits one or more of the following with malice: (1) perjury; (2) fabrication of evidence; (3) failure to disclose known exculpatory evidence; or (4) obtaining testimony by duress. Cal. Gov't Code § 820.21(a). Social workers in particular have absolute immunity when they make "discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents," but "are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition affidavit that they signed under penalty of perjury, because

/////

9

1    such actions aren't similar to discretionary decisions about whether to prosecute." *Beltran v.*

2    *Santa Clara Cnty.*, 514 F.3d 906, 908 (9th Cir. 2008).

3         2.   Fraud Exception

4        While defendants do not expressly invoke the Federal Rules of Civil Procedure,

5    Rule 9(b) requires that when alleging fraud, including fabrication or failure to disclose evidence,

6    plaintiffs must "state with particularity the circumstances constituting fraud or mistake."  Here,

7    plaintiffs allege that defendants (a) suppressed Dupree's drug test results (FAC ¶ 37); (b)

8    suppressed facts about Dupree's history of drug abuse and felony convictions (*id.*); (c) fabricated

9    the portion of the FCS Report stating that Akey gave her consent to the termination of her custody

10   of N.D. (*id.* ¶¶ 25, 27); (d) fabricated the portion of the FCS Report that stated "Sutton was able

11   to assess the home of Cameron Dupree" and that the home was "neat and nicely furnished" (*id.* ¶

12   34); (e) filed a false report with the California Department of Justice stating that Cornacchioli was

13   a perpetrator of physical abuse on N.D. (*id.* ¶¶ 31–2); and (f) suppressed or prevented the FCS

14   investigative report from being given to plaintiffs (*id*. ¶ 50).

15       Because plaintiffs allege defendants Sutton and Myers fabricated evidence in their

16   report, and point to that evidence with sufficient particularity, their allegations are sufficient for

17   the actions of Sutton and Myers to fall within the exception to immunity.  *See Gonzalez v. Cnty.*

18   *of Los Angeles*, No. 08-02177, 2008 WL 2951272, at *2 (C.D. Cal. July 28, 2008) (allegations

19   that defendants reported information they knew to be untrue sufficient); *Masoud v. Cnty. of San*

20   *Joaquin*, No. 06-1170, 2006 WL 3251797, at *8 (E.D. Cal. Nov. 8, 2006) (finding even

21   "generalized pleading is sufficient to invoke the exception to the general grant of governmental

22   immunity").  The motion to dismiss these claims is denied.

23     C.   NIED/IIED (Claims 27–30)

24       As noted, plaintiff Clayton asserts claims for intentional and negligent infliction of

25   emotional distress against defendants Sutton and Myers.  Plaintiffs allege that during Sutton's

26   phone call with Akey, plaintiff Clayton was physically present and heard Sutton deliver the news

27   that Akey had lost custody of her son.  FAC ¶¶ 23-24.  Further, Clayton allegedly directly

28   witnessed Sutton's intentional effort to coerce Akey's consent to giving sole custody of N.D. to

Dupree by threatening to take all of Akey's children away, and Myers' subsequent phone call delivering the same message. *Id.* ¶¶ 25, 27.

### 1. Intentional Infliction of Emotional Distress (Claims 27, 28)

Under California law, a claim for intentional infliction of emotional distress (IIED) requires a prima facie showing of: (1) extreme and outrageous conduct by the defendant; (2) with the intention of causing emotional distress or reckless disregard of the probability of causing emotional distress; (3) plaintiff's suffering of severe emotional distress; and (4) actual and proximate causation of plaintiff's emotional distress by defendant's conduct. *See Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991); *see also Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996). Sufficiently outrageous conduct rises to a level exceeding the bounds usually tolerated in civilized society. *Simo v. Union of Needletrades, Indus. & Textile Employees, Sw. Dist. Council*, 322 F.3d 602, 622 (9th Cir. 2003).

To state an IIED claim, a plaintiff must allege a defendant's conduct specifically directed at the plaintiff or conduct that recklessly occurred in the presence of a plaintiff of whom the defendant is aware. *Ess v. Eskaton Properties, Inc.*, 97 Cal. App. 4th 120, 130 (2002). Sufficient allegations of intentional conduct convey "the most extreme cases of violent attack," where there is an increased likelihood of severe emotional distress. *Christensen*, 54 Cal. 3d at 905. Sufficient allegations of reckless conduct do not require that the defendant have specifically directed his or her conduct at the plaintiff. Rather, the complaint must allege that the defendant was aware of the plaintiff's presence and acted with reckless disregard of the probability that his or her conduct would cause severe emotional distress. *Id.*

Plaintiffs' amended complaint alleges only that Clayton was at home with Akey at the time of the phone calls from Sutton and Myers and could hear the full conversations. It does not allege that defendants were aware they were on a speaker phone or that Clayton was listening. Plaintiffs have not alleged that defendants' conduct was specifically directed at Clayton or that defendants conducted themselves with any awareness of her presence. The motion to dismiss the IIED claims, is granted with leave to amend, in the event plaintiff can amend while satisfying Federal Rule of Civil Procedure 11.

11

2.   Negligent Infliction of Emotional Distress (Claims 29, 30)

Plaintiffs allege negligent infliction of emotional distress (NIED) under a theory of bystander liability.  FAC ¶¶ 269–274, 277–282.  The elements of a claim for bystander liability are articulated in *Thing v. La Chusa*, 48 Cal. 3d 644, 647 (1989), and require that the bystander: (1) be closely related to the injured victim; (2) be present at the injury-producing event and aware that it was causing injury to the victim; and (3) suffer serious emotional distress beyond that typically anticipated in a disinterested witness.  *Thing*, 48 Cal. at 667–78.  "Serious" emotional distress is a less exacting standard than the "severe" standard required of IIED claims.  *Graves v. City of Stockton*, No. S040430, 2006 WL 768831, at *7 (E.D. Cal. Mar. 27, 2006).  While physical injury is no longer required, the emotional distress must be of such a nature that "a reasonable [person], normally constituted," would be unable to endure it.  *Molien v. Kaiser Found. Hospitals*, 27 Cal.3d 916, 928 (1980).

Here, plaintiff Clayton's claims satisfy *Thing*'s first and second elements.  Clayton is Akey's mother and was present at the time of Akey's phone conversations with Sutton and Myers and aware of their injury-producing content.  Plaintiffs have not, however, sufficiently alleged the requisite level of seriousness for an NIED claim.

In a case raising similar issues out of this district, airport officers detained and arrested a traveler in view of his wife and children when a background check produced an outstanding misdemeanor for a man with the same name but dissimilar appearance, residency status, and fingerprints.  *Garcia ex rel. v. Cnty. of Sacramento*, No. S-11-3317, 2012 WL 1605056, at *2 (E.D. Cal. May 7, 2012).  The man's family members based their NIED claims on having been "subjected to the specter of seeing their husband and father being paraded away in handcuffs."  *Id.* at *5.  The court in *Garcia* noted that while California courts have allowed recovery absent physical injury to a bystander, they have not extended recovery to cases in which the bystander did not at least witness a physical injury.  *Id.* at *6.  Because the man himself did not suffer any physical harm, the court dismissed the family's bystander claims.  *Id.*  Even when physical injury is inflicted, California courts have been skeptical of bystander claims where the emotional distress claimed was not sufficiently serious.  *See, e.g., Mealy v. B-Mobile, Inc.*, 195

12

1  Cal. App. 4th 1218, 1266 (2011) (husband could not recover NIED damages against manufacturer
2  after witnessing wife's fall from wheelchair and resulting hip fracture); *see also Sanchez v.*
3  *United States*, 803 F. Supp. 2d 1066, 1068 (C.D. Cal. 2011) (reducing damages award because
4  plaintiff's nightmares and depression from witnessing his sister being struck by car were "mostly
5  the product of caring for [his sister], not the product of experiencing the collision").

6  This court has located another instance in which a court found a complaint
7  sufficiently alleged serious emotional distress without describing physical injury to the bystander
8  or otherwise involved in the incident.  In *Haddox, a* court found the complaint alleged that the
9  bystander overheard a police officer say, "If you drop your hands you will be shot" to her minor
10 children through a friend's cell phone.  *Haddox v. City of Fresno*, No 107-00241, 2008 WL
11 53244, at *2 (E.D. Cal. Jan. 2, 2008), *abrogated on other grounds by Sanchez v. City of Fresno*,
12 914 F. Supp. 2d 1079 (E.D. Cal. 2012).  The court held this allegation stated a bystander claim for
13 NIED.  *Id.* at *13.

14 This case, however, is distinguishable from *Haddox* because plaintiffs allege no
15 threat of imminent physical injury.  Rather, this case more closely resembles *Garcia* in that
16 plaintiff Clayton alleges emotional distress "caused by the loss of familial relations with her
17 grandson," and then only vaguely.  FAC ¶¶ 273, 281.  Accordingly, the motion to dismiss the
18 NIED claims is granted, but here as well with leave to amend if possible.

19        D.       Motion for Reconsideration
20               1.   Warrantless Removal

21 Defendants argue the court's previous ruling denying their motion to dismiss was
22 based improperly on "standards applied to warrantless taking of children by social workers, when
23 the standard should have been for situations where the social worker threatened to pursue a
24 warrant." Defs.' Mot. at 20.  "The court's decision to conclude that a warrantless taking had
25 occurred and apply the exigent circumstances test was clear error that is subject to
26 reconsideration." *Id.*  "Defendants purportedly said they would seek a warrant, not that they
27 would perform a warrantless taking." *Id*. at 9 (quoting Original Compl. ¶¶ 25, 27) ("if you don't
28 comply, then I am going to get a warrant . . ."). Defendants argue specifically the court denied

13

their first motion to dismiss "on the basis [of] a clear factual error . . . when the court determined that defendants removed N.D. from the home without a warrant." *Id.* at 1.

The court, however, did not "determine[]" that defendants removed N.D. from the home without a warrant; it is undisputed that a warrant was never issued or sought in this case. *Id.* at 15. A warrantless taking, when not justified by exigent circumstances, is a well-settled constitutional violation. The Fourth Amendment has been found to protect children and families from warrantless removal of a child from the family home. *See Doe v. Lebbos*, 348 F.3d 820, 827 n.9 (9th Cir. 2003). If the allegations in the complaint were that defendant social workers threatened to pursue a warrant, and plaintiff then submitted to the change in N.D.'s custody, the court's inquiry would be limited to whether that threat was impermissibly coercive in nature. *See Sangraal v. City and County of San Francisco*, 2013 WL 3187384, at *27–28 (N.D. Cal. 2013) (safety plan may be impermissibly coercive "when a state agency lacks legal authority to remove the child but coerced parents into agreeing to a safety plan by threatening to remove the child anyway"). But here, plaintiffs originally alleged that Akey did not submit to the "safety plan" even after the warrant was threatened. This allegation is included again in plaintiffs' first amended complaint, which says that "Akey remained steadfast and refused to agree to any custody change for N.D." and "Akey was even more shocked, hurt, and angered by the repeated threat, but she again stood her ground and refused to give consent." FAC ¶¶ 25, 27.[2]

Defendants cite the district court's decision in *Olvera* in support of the motion for reconsideration, as they did in their original motion to dismiss. That case is distinguishable in that there the juvenile court issued a protective custody warrant for removal. *Olvera v. Cnty. of*

---

[2] It is unclear on what basis defendants argue consent was obtained; the original complaint and first amended complaint are consistent in stating that Akey never agreed to the change in custody. *See* ECF No. 1 ¶ 25; ECF No. 20 ¶¶ 25, 27. Defendants state in their motion that Sutton and Myers "obtained an agreement from a reluctant Ms. Akey that N.D. could remain with his biological father, Cameron Dupree, until the conclusion of the investigation," Defs.' Mot. at 1, "[t]he safety plan was an agreement that plaintiffs grudging [sic] agreed to . . . ," *id*. at 11, and Akey "allegedly told Ms. Sutton about Dupree's drug history and Sutton allegedly responded that Dupree would be drug tested every day. [citation omitted] This suggests that Ms. Akey had grudgingly consented to the safety plan." *Id*. at 9. The court disagrees that Sutton's statement that Dupree would be drug tested can be read as Akey's consent to give custody to Dupree.

14

1  *Sacramento*, 932 F. Supp. 2d 1123, 1133 (E.D. Cal. 2013).  While defendants argue that "a
2  warrantless taking and a social worker pursuing a warrant are factually distinct," Defs.' Mot. at
3  19, here there is no allegation, or anything presented to the court, to show any social worker
4  pursued a warrant.  Defendants concede that "assuming arguendo that [plaintiffs'] allegation is
5  true, Ms. Sutton cannot accomplish [removal] without either an order from the court, or the
6  consent of Ms. Akey and Mr. Dupree." *Id.* at 4.  They are silent as to the third possibility, which
7  is what plaintiffs allege: removal accomplished through a warrantless taking.  The court must take
8  the allegations as pled.

9          The motion for reconsideration is denied.

10         2.  Qualified Immunity

11         Defendants also seek reconsideration of the court's finding that qualified immunity
12 does not insulate Sutter and Myers from liability.  The qualified immunity inquiry has two
13 prongs: whether a constitutional violation occurred, and whether the violated right was "clearly
14 established" at the time of the violation.  *Pearson v. Callahan*, 555 U.S. 223, 234 (2009).  A court
15 may consider either prong at the outset, in the interest of efficiency and conservation of judicial
16 resources, based on the individual case's factual context.  *Id*. at 236.

17         Because defendants premise their argument on the assertion that the Ninth Circuit
18 has not yet articulated a standard to apply where social workers are alleged to coerce consent to a
19 safety plan, and therefore there is no "clearly established" constitutional right, Defs.' Mot. at 17,
20 the court addresses the second prong first.  A right is clearly established if it was "sufficiently
21 clear [at the time of the conduct at issue] that every reasonable official would have understood
22 that what he is doing violates that right." *Taylor v. Barkes*, __ U.S. __, 135 S. Ct. 2042, 2044
23 (2015).  The Supreme Court does "not require a case directly on point" for the law to be clearly
24 established, although precedent "must have placed the statutory or constitutional question beyond
25 debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2083 (2011).  In cases that remain
26 viable, the Court also has noted "[c]learly established" does not require that "the very action in
27 question has previously been held unlawful," but only that "in the light of pre-existing law the
28 unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Hope*

15

*v. Pelzer*, 536 U.S. 730, 741 (2002) (actors "can still be on notice that their conduct violates established law even in novel factual circumstances"). As set forth above, the alleged facts are that plaintiff never consented to the removal of N.D., and a warrant was never obtained for his removal. The law against warrantless taking is clearly established under the Fourth Amendment. Dismissing on qualified immunity grounds at this stage is not warranted.

IV.     CONCLUSION

The motion to dismiss is GRANTED with leave to amend as to plaintiffs' *Monell* Claims (Claims 1–2, 7–8, 13) and IIED/NIED claims (Claims 27–30), and DENIED in all other respects. The motion for reconsideration is DENIED. This order resolves ECF No. 21.

IT IS SO ORDERED.

DATED: September 1, 2015.

_____
UNITED STATES DISTRICT JUDGE