1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RACHAEL AKEY, et al.,                    No.  2:14-cv-2402 KJM DB

12              Plaintiffs,

13        v.                                  ORDER

14   PLACER COUNTY, et al.,

15              Defendants.

16

17              This civil rights action is before the court on plaintiffs' four opposed motions.

18   First, plaintiffs move to continue the discovery cut-off.[1]  Second, plaintiffs move to amend their

19   *Monell* claims[2] against defendant Placer County.[3]  Third, plaintiffs move to amend their negligent

20   infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED")

21   claims.[4]  Finally, plaintiffs move for reconsideration of two of the magistrate judge's rulings.[5]

22

23        [1] *See* Mot. Continue, ECF No. 69; Opp'n Mot. Continue, ECF No. 83; Reply Mot.
     Continue, ECF No. 86.
24        [2] Relying on *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) and
     its progeny, plaintiffs bring claims against Placer County.  *See* Third. Am. Compl. ("TAC")
25   (counts 1–2, 7–8, 13), ECF No. 38.
          [3] *See* Mot. Am. Third Am. Compl. ("TAC") [*Monell*], ECF No. 76; Proposed Fourth Am.
26   Compl. ("PFAC"), ECF No. 78; Opp'n Mot. Am. TAC [*Monell*], ECF No. 84; Reply Mot. Am.
     TAC [Monell], ECF No. 87.
27        [4] *See* Mot. Am. TAC [NIED], ECF No. 51; Opp'n Mot. Am. TAC [NIED], ECF No. 56;
     Reply Mot. Am. TAC [NIED], ECF No. 58.
28
                                            1

The court held a hearing regarding all four motions on November 4, 2016. Patrick Dwyer appeared for plaintiffs; Clayton Cook appeared for defendants. ECF No. 91. For the following reasons, the court GRANTS the motion to continue, GRANTS the motion for leave to amend the *Monell* claims, DENIES the motion for leave to amend the NIED/IIED claims, and DENIES the motion for reconsideration.

I.      BACKGROUND

        A.      Factual Background

              This case involves the custody of plaintiff N.D., a minor who was three years old at the time period relevant to the operative complaint. TAC ¶ 1. N.D.'s mother is plaintiff Rachael Akey[6] and N.D.'s father is Cameron Dupree, who is not a party to this case. *Id.* ¶¶ 2–4. Akey and Dupree were never married and currently live apart. *Id.* ¶¶ 3–4. At the time of the acts alleged in the complaint, Akey and Dupree had recently concluded a lengthy custody dispute in Placer County Superior Court. *Id.* ¶ 11. Under the resulting custody order, N.D. was to live with Akey, and Dupree was to have regular unsupervised visits with N.D. from Tuesday morning to Wednesday morning each week and on alternating weekends. *Id.* After the order went into effect, there was continuing rancor between the parents, *id.*; in the days leading up to the incident underlying the complaint, Akey requested a court-ordered drug test of Dupree on September 6, 2013, *id.* ¶ 16, and Dupree requested a drug test of Akey on September 7, 2013, *id.* ¶ 17.

              On the morning of Thursday, September 12, 2013, Akey and her husband, plaintiff Ryan Cornacchioli, took N.D. to school, expecting to pick him up that afternoon. *Id.* ¶ 19. Unbeknownst to Akey, defendant Placer County Family and Children Services ("FCS") had recently received a report from N.D.'s school. *Id.* ¶ 20. According to the report, N.D. had said that Cornacchioli choked and threatened N.D. *Id.* Defendant social worker Gloria Sutton, an FCS employee, began an investigation on September 12, 2013 by going to N.D.'s school and

---

        [5] *See* Mot. Reconsider, ECF No. 80; Opp'n Mot. Reconsider, ECF No. 81; Reply Mot. Reconsider, ECF No. 88.
        [6] Plaintiffs' filings with the court repeatedly spell Ms. Akey's name differently, sometimes referring to her as "Rachel" and sometimes as "Rachael." *Compare* Mot. Reconsider *with* TAC. This order adopts the spelling used in the "Parties" section of the third amended complaint. TAC at 6.

speaking with N.D. and N.D.'s teacher. *Id. ¶* 21. Sutton then spoke with Dupree on the phone, who confirmed that N.D. had mentioned the choking on September 10. *Id.* ¶ 21. On this basis, Sutton, with the approval of defendant social worker Scott Myers, made the decision to give full custody to Dupree. *Id.* ¶ 22. At Sutton's request, Dupree picked up N.D. from school on September 12. *Id.*

Also on September 12, 2013, Sutton called Akey to discuss the allegations of Cornacchioli's abuse of N.D. *Id.* ¶ 23. Because Akey put her phone on speaker mode, Cornacchioli and Clayton heard the entire conversation, which included sharing allegations that Cornacchioli had strangled and threatened to kill N.D. *Id.* ¶¶ 23–24. In response, Akey told Sutton that Cornacchioli was out of town on military duty prior to September 10 and that N.D. had not come back into their custody until after school on September 11, and thus the allegations could not possibly be true. *Id.* ¶ 24. Undeterred, Sutton explained that Dupree retained full custody during the pending FCS investigation. *Id.* Sutton further pressured Akey to consent to an FCS order giving immediate and full custody to Dupree; Akey declined. *Id.* ¶ 25. In a follow-up conversation with Sutton's supervisor, Myers similarly pressured Akey to consent to give custody to Dupree; Akey again declined. *Id.* ¶ 26. Although Myers explained the investigation would be over by September 17 and there would be a reunification plan, *id.* ¶ 28, N.D. remained in Dupree's sole custody until March 2014, *id.* ¶ 22.

Plaintiffs point to a series of alleged violations related to these incidents, including FCS's improper removal of N.D., *id.* ¶¶ 15–28, and FCS's wrongful reporting of Cornacchioli to the Department of Justice ("DOJ") Child Abuse Central Index. *Id.* ¶¶ 29–35. Plaintiffs point to the fact that Cornacchioli was away on military duty at the time of these incidents to show that the allegations against Cornacchioli were demonstrably false and an improper basis for FCS's removal of N.D. and reporting of Cornacchioli. *Id.* ¶ 24. Plaintiffs allege Sutton and Myers failed to follow proper procedures in their investigation, *id.* ¶¶ 37–38, failed to make a good faith investigation, *id.* ¶¶ 39–45, fabricated evidence, *id.* ¶¶ 46–47, and suppressed exculpatory evidence, *id.* ¶¶ 48–50.

1    B.    Procedural Background and Plaintiffs' Claims

2            Based on these incidents, plaintiffs filed a Government Tort Claims Act claim

3    against defendants on March 11, 2014.  *Id.* ¶ 36.  The claim was rejected by the County of Placer

4    and then by the Judicial Council of California in April 2014.  *Id.*

5            Plaintiffs filed the original complaint on October 12, 2014, the first amended

6    complaint on April 10, 2015, the second amended complaint on September 30, 2015, and the

7    operative third amended complaint on April 6, 2016.  Compl., ECF No. 1; First Am. Compl.

8    ("FAC"), ECF No. 20; Second Am. Compl. ("SAC"), ECF No. 29; TAC.  Plaintiffs filed each of

9    the amended complaints after the court granted defendants' motions to dismiss, at least in part.

10   *See* Orders, ECF Nos. 18, 26, 37.  Defendants answered the operative third amended complaint

11   on May 5, 2016.  Am. Answer, ECF No. 45.

12           Plaintiffs' third amended complaint includes twenty-six claims, fifteen of which

13   are against defendants under 42 U.S.C. § 1983 on the basis of alleged federal constitutional

14   violations.  TAC ¶¶ 51–196.  All three plaintiffs assert procedural due process rights under the

15   Fourteenth Amendment against all defendants, while only Akey and N.D. assert a substantive due

16   process right to an unimpaired parent-child relationship under the Fourth and Fourteenth

17   Amendments against all defendants.  *Id.*  The federal claims are brought against Placer County

18   based on a theory of municipal liability under *Monell*.  *Id.* ¶¶ 51–64 (counts 1–2), 109–22 (counts

19   7–8), 167–74 (count 13).

20           Plaintiffs also bring eleven state law claims against defendants on the basis of

21   alleged state constitutional violations.  *Id.* ¶¶ 197–255.  Each of the state claims asserts state

22   constitutional violations analogous to the federal claims.  *Id.*  The state claims are brought against

23   Placer County under a theory of vicarious liability.  *Id.* ¶¶ 211–16 (count 20), 234–38 (count 23),

24   251–55 (count 26).

25           As noted, plaintiffs move the court to (1) continue the trial date, (2) grant leave to

26   amend their *Monell* claims, (3) grant leave to amend their NIED/IIED claims, and (4) reconsider

27   two of the magistrate judge's rulings.  In the following sections, the court addresses each of

28   plaintiffs' motions in turn.

4

II.    MOTION TO CONTINUE

A.    Procedural Background

The court issued an initial pretrial scheduling order in March 2015, in which the court set a discovery cut-off of March 7, 2016, and set trial for September 19, 2016.  Scheduling Order March 24, 2015, ECF No. 19.  Based on the parties' subsequent stipulation, the court found good cause and modified the initial scheduling order, extending discovery until September 30, 2016 and resetting trial for April 3, 2017.[7]  Scheduling Order Feb. 10, 2016, ECF No. 36.  On September 28, 2016, plaintiffs filed the current motion to continue the trial date.  Mot. Continue. Plaintiffs request a 90- to 120-day extension of the discovery period, with trial reset to after August 2017.  Defendants oppose the motion, but also agree to continue the trial date if the court grants either of plaintiffs' pending motions to amend the complaint.  Opp'n Mot. Continue at 2.

B.    Standard

The pretrial scheduling order is designed to allow the district court to better manage its calendar and to facilitate the more efficient disposition of cases by settlement or by trial.  *See Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 607–08 (9th Cir. 1992).  A scheduling order may only be changed with the court's consent and for "good cause."  Fed. R. Civ. P. 16(b)(4).  A scheduling order is not "a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."  *Gestetner Corp. v. Case Equip. Co*., 108 F.R.D. 138, 141 (D. Me. 1985).  On the other hand, the "good cause" standard requires less than the "manifest injustice" test used to modify a final pretrial order.  *See* Fed. R. Civ. P. 16(e); *see also* Fed. R. Civ. P. 16, 1983 Advisory Committee Notes ("Since the scheduling order is entered early in the litigation, this standard seems more appropriate than a 'manifest injustice' or 'substantial hardship' test.").  When litigants request changes to a scheduling order, the court's inquiry focuses on their diligent efforts to comply.  *See Johnson*, 975 F.2d at 609.  A district court has "broad discretion" to grant or deny a continuance.  *United States v. Flynt,* 756 F.2d 1352, 1358 (9th Cir. 1985).

---

[7] On December 6, 2016, the court vacated the April 3rd trial date by minute order, ECF No. 93.

C.    Discussion

1.    Initial Matter

Defendants argue plaintiffs' motion is subject to denial on the simple grounds that it does not include an express Rule 16 request to modify the scheduling order. Opp'n Mot. Continue at 3 (citing *Johnson*, 975 F.2d at 608–09). Defendants raise this same argument in response to plaintiffs' motion to amend the complaint, discussed below. For the reasons discussed in that section, the court declines to deny plaintiffs' motion to continue on this basis and proceeds to determine whether plaintiffs establish good cause to continue the trial date.

2.    Good Cause

Plaintiffs base their request to amend the scheduling order on two compelling areas in which they say further discovery is needed. The court finds these arguments persuasive.

a)    Original Case File

Plaintiffs argue, as of the time of their filing, the original case file from FCS has not been produced in full and they need additional time to follow up on the absence of these essential documents. Mot. Continue at 7. More specifically, plaintiffs have not received a signed copy of the Investigative Narrative, which plaintiffs describe as "the central document in the case" and the key to determining defendants' reasons for substantiating the abuse claim against Akey and Cornacchioli. *Id.* Plaintiffs also have not received a signed copy of the Structured Decision Making ("SDM") Risk Assessment Form, a document plaintiffs argue would provide the basis for removing N.D. from plaintiffs. *Id.* at 7–8; *see also* Dwyer Decl. Ex. 7, ECF No. 69-1 (unsigned SDM Risk Assessment form).

Since plaintiffs filed their motion, and after the close of discovery, defendants found and turned over both of these signed documents. Opp'n Mot. Continue at 7. Defendants explain they believed the documents were lost or destroyed until conducting a recent, unrelated search of a county employee's desk; they acknowledge the timing of this production is "unfortunate." *Id.* at 7–8. Still, defendants argue plaintiffs received unsigned copies of these documents, identical in all respects but for the missing signatures, more than two years ago and

plaintiffs previously could have determined when the documents were signed by sending written discovery or conducting depositions. *Id.* at 8–9.

The court finds the relatively recent production to be a compelling reason to continue the discovery period. "[C]ourts often find good cause when the motion to amend the scheduling order is based upon new and pertinent information." *Lyon v. U.S. Immig. & Cust. Enf't*, 308 F.R.D. 203, 216 (N.D. Cal. 2015); *see, e.g.*, *Defazio v. Hollister, Inc.*, CIV 04-1358 WBS GGH, 2008 WL 2825045, at *1 (E.D. Cal. July 21, 2008) (finding good cause to amend the complaint because new allegations stemmed from materials recently disclosed through discovery); *cf. Johnson*, 975 F.2d at 609 (finding no good cause to extend a scheduling order deadline where based on information available to movant throughout the suit). Here, defendants' signatures on these documents speak to their authenticity and completeness, as well as the relative timing in the sequence of events leading to the removal of N.D from Akey. Thus, the fact that plaintiffs did not receive signed versions of these documents until after defendants Sutton and Myers were deposed, and until after the close of the discovery period, forms a strong basis for plaintiffs' motion here.

b)    FCS Logbook

Plaintiffs argue they need more time to review the Placer County FCS logbook because there exist "conflicting evidence and 'mysterious' circumstances that need more discovery to resolve." *Id.* at 12. More specifically, plaintiffs allege they cannot yet determine whether FCS ever reported plaintiff Cornacchioli to the California Department of Justice's ("DOJ") Child Abuse Central Index ("CACI"), which is the basis for Cornacchioli's procedural due process claims. *Id.* at 9–10, 12; TAC ¶¶ 167–96, 239–50. Although defense counsel stated in October 2014 that he believed FCS never reported Cornacchioli, a relevant form—Form 8583— contains a DOJ special report number, which plaintiffs assert would only be created after a case is reported to the DOJ. *Id.* at 12–13. Defendants' recent depositions confirm that FCS was required to report Cornacchioli to the DOJ and Sutton stated he knew of no other case in which FCS failed to report to the DOJ when so required. *Id.* at 13–14. Plaintiffs ask for more time to review the

FCS logbooks documenting reports to the DOJ as well as time to depose clerical staff responsible for submitting the reports. *Id.*

Defendants make two principal arguments in response to plaintiffs' stated reasons for requesting extra time to analyze the FCS logbook. First, defendants implicitly argue plaintiffs' request is moot, because Cornacchioli is no longer listed on the CACI index. *Id.* at 6. Second, defendants argue they have already shared relevant portions of the FCS logbooks during a recent deposition and the logbook reveals Cornacchioli was not reported by FCS. *Id.* at 6.

Again, the court finds plaintiffs' argument the more persuasive. Plaintiffs' allegation that FCS reported Cornacchioli to the DOJ forms the basis of all of Cornacchioli's claims. *See* TAC (claims 13–15, 24–26). Plaintiffs thus point out that a significant factual question, as recent depositions of Sutton and Myers confirm, has yet to be definitively answered. The Form 8583, which includes a special report number in the box labeled "For DOJ Use Only," supports a justifiable inference that Cornacchioli was reported to the DOJ. Dwyer Decl., Ex. 4, ECF No. 69-1. Defendants are incorrect in implying that whether Cornacchioli was ever reported to the DOJ is irrelevant given that he is no longer listed on the DOJ's index. As the third amended complaint makes clear, Cornacchioli is not only asking for injunctive relief in the form of removal from the CACI index, TAC ¶ 174, but he is also asking for damages caused by the loss of earning capacity, reputational harm, and the severe emotional and mental distress all allegedly caused by being reported in the first place. *Id.* ¶ 172. Whether Cornacchioli was reported to the DOJ, and not just whether he continues to be listed on the CACI index, continues to be a question central to Cornacchioli's claims. The FCS logbook page that defendants produced during a recent deposition may help to answer that question, as defendants argue, but it does not definitely resolve it. Plaintiffs' second argument provides a persuasive basis for granting their motion.

3.     Recent Depositions

Defendants argue that, even if recent depositions and discovery provide a basis for additional discovery, plaintiffs have not shown why they did not conduct the depositions and discovery sooner. Opp'n Mot. Continue at 3–5. Defendants point to a nine-month window

between plaintiffs' initial written discovery and their more recent "flurry" of activity, which included four sets of document requests and eight depositions in the final two months of the original discovery period. *Id.* at 4.

Plaintiffs' reply adequately addresses these concerns. *See generally* Reply Mot. Continue. From the start, plaintiffs intended to focus their discovery only on their *Monell* claims because the second custody case in Placer County Superior Court had already allowed serving of subpoenas, taking of depositions, and a full trial regarding plaintiffs' other claims here. *Id.* at 3. Because the court dismissed the *Monell* claims in plaintiffs' original and first amended complaint, plaintiffs could not proceed with the corresponding *Monell* discovery until after they filed their second amended complaint in September 2015. Reply Mot. Continue at 4. Defendants impliedly accepted the sufficiency of the *Monell* claims in plaintiffs' second amended complaint when, in October 2015, they moved to dismiss other claims in the second amended complaint but did not challenge the *Monell* claims. *See generally* Mot. Dismiss SAC, ECF No. 30; Reply Mot. Continue at 4. Plaintiffs filed *Monell*-related discovery later in October 2015, and, after defendants' initial production, plaintiffs moved to compel production of documents related to the County's other investigations. *See* Mot. Compel, ECF No. 39. The magistrate judge granted in part plaintiffs' motion to compel in May 2016, and required defendants to produce case files from other investigations. Order May 5, 2016, ECF No. 47. Defendants acknowledge "it did take some time" to produce responsive documents, Opp'n Mot. Continue at 4, and plaintiffs assert they did not receive the case files until August 2016. Reply Mot. Continue at 4. It was reasonable for plaintiffs to wait to depose Sutton and Myers, the County employees involved in the investigation in this case, until plaintiffs had more information regarding other County investigations, because plaintiffs' claims are tied to County policies and practices that Sutton and Myers allegedly followed. Plaintiffs' depositions of Sutton and Myers on September 12–13, 2016, and current motion filed on September 28, 2016, were therefore timely.

D.     Conclusion

For the reasons stated above, plaintiffs' first and second reasons for requesting to amend the scheduling order provide a sufficient basis for finding "good cause" here. The court

9

need not address plaintiffs' other arguments supporting their request.[8]  Plaintiffs' motion is GRANTED.

The parties originally submitted competing positions on modification of the scheduling order.  *Compare* Mot. Continue at 1, 6, *with* Opp'n Mot. Continue at 2.  At the court's instruction, the parties have now submitted a joint statement after hearing to address their positions regarding the appropriate scope of discovery in light of the documents recently produced.  Jnt. Statement, ECF No. 92.  After considering the parties' positions as to the appropriate scope of additional discovery, the court extends the fact discovery period without limiting the scope beyond the parameters established by the complaint and answer.  As a result, the court need not address at this juncture plaintiffs' individual requests for additional discovery.

The schedule for the case, ECF Nos. 19, 36, is modified as follows: the period for discovery shall be extended to July 31, 2017; disclosure of expert witnesses is due by September 1, 2017 and supplemental disclosure of expert witnesses is due by September 22, 2017; the period for expert discovery shall be completed by September 29, 2017; all dispositive motions shall be heard by November 3, 2017; the Final Pretrial Conference is reset for February 23, 2018 at 10:00 a.m., with the Joint Pretrial Statement due by February 2, 2018; and the Jury Trial date is reset for April 9, 2018 at 9:00 a.m., with trial briefs due by March 26, 2018.

The court next addresses plaintiffs' motions to amend the *Monell* claims and the NIED/IIED claims.

III.     MOTION FOR LEAVE TO AMEND *MONELL* CLAIMS

A.     Standard

A party seeking leave to amend the pleadings after the deadline specified in the scheduling order must first establish "good cause" to amend the scheduling order under Rule 16 and then, if good cause exists, adequately establish the propriety of amendment under Rule 15(a).  *Johnson*, 975 F.2d at 608–09 (approving this order of operations applied in *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C.1987)).  The two inquiries are not coextensive.  *Id.* at 609.

---

[8] The court also denies without prejudice plaintiffs' request for sanctions for untimely production of documents leading up to recent depositions.  *See* Mot. Continue at 9–11.

As discussed above, Rule 16(b)'s good cause standard focuses primarily on the diligence of the moving party, *id.*, and that party's reasons for seeking modification, *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th Cir. 2011).

In contrast, Rule 15(a) provides a liberal amendment policy, *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989), under which a "court should freely give leave [to amend a pleading] when justice so requires," Fed. R. Civ. P. 15(a)(2). "In exercising its discretion, 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). However, "the liberality in granting leave to amend is subject to several limitations." *Ascon Props.*, 866 F.2d at 1160 (citations omitted). A court need not grant leave to amend where there is "undue delay," "bad faith," "undue prejudice to the opposing party," or "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Smith v. Pac. Prop. Dev. Co.*, 358 F.3d 1097, 1101 (9th Cir. 2004) (citing the *Foman* factors). Not all of the *Foman* factors carry equal weight. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd.*, 833 F.2d at 187. "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052.

Here, the original scheduling order foreclosed amendments without leave of court. Scheduling Order March 24, 2015 at 2 ("No further joinder of parties or amendments to pleadings is permitted without leave of court, good cause having been shown."). As a result, the court will consider the factors under Rule 16 and, if good causes exists, the factors under Rule 15(a). *See Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999).

B.    Procedural Background

Plaintiffs filed their original complaint in October 2014. After defendants filed a motion to dismiss, the court granted the motion as to various claims in the complaint and granted

11

leave to amend. Order March 30, 2015, ECF No. 18. Plaintiffs filed a first amended complaint, defendants moved to dismiss, and the court granted the motion as to plaintiffs' *Monell* and NIED/IIED claims and granted leave to amend. FAC; Mot. Dismiss FAC, ECF No. 21; Order Sept. 1, 2015, ECF No. 26. Plaintiffs filed a second amended complaint, defendants moved to dismiss, and the court granted the motion as to plaintiffs' NIED/IIED claims. SAC; Mot. Dismiss SAC; Order March 22, 2016, ECF No. 37. Plaintiffs filed a third amended complaint in April 2016, and defendants soon after filed an answer and then an amended answer. TAC; Answer, ECF No. 43; Am. Answer.

Plaintiffs have bifurcated their current attempt to amend the third amended complaint. In an earlier motion, filed on July 28, 2016, plaintiffs sought to amend their NIED/IIED claims. Mot. Am. TAC [NIED]. The court submitted that motion without argument. ECF No. 64. In their current motion, filed on October 5, 2016, plaintiffs seek to amend their *Monell* claims. Mot. Am. TAC [*Monell*]. Defendants oppose the motion. Opp'n Mot. Am. TAC [*Monell*]. The court heard argument for plaintiffs' second motion on November 4, 2016. ECF No. 91.

C.     Discussion

1.     Initial Matter

Defendants argue plaintiffs' motion is subject to denial on the simple grounds that it does not include a Rule 16 request to modify the scheduling order. Opp'n Mot. Am. TAC [Monell] at 2 (citing *Johnson*, 975 F.2d at 608–09). Although the Ninth Circuit has suggested denial may be appropriate on these grounds, it has never actually required such a rigid rule. *See Johnson*, 975 F.2d at 608–09 (citing *Jauregui v. City of Glendale*, 852 F.2d 1128, 1133–34 (9th Cir. 1988); U*.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985)). Moreover, the district courts in *Johnson*, *Jauregui*, and *U.S. Dominator*, declined to apply such a rule, even though the Ninth Circuit affirmed the decisions in those cases on that basis.

The court finds the application of such a rule here would likely be inefficient; a district court's recent experience applying defendants' rigid interpretation of *Johnson* is

instructive.  In *Contra C.F.*, the Central District applied what it acknowledged "may appear to be a strict requirement" and denied defendants' motion to amend the complaint because defendants had failed to also request a scheduling order modification.  *Contra C.F. v. Capistrano Unified Sch. Dist.*, 647 F. Supp. 2d 1187, 1191 (C.D. Cal. July 27, 2009) ("Although a request to modify the Scheduling Order need not appear in a separate motion, the School Defendants do not specifically make such a request in the motion for leave to amend.").  However, the court denied defendants' motion without prejudice, *id.*, and defendants re-applied three days later, this time with a request to amend the scheduling order, *id.* (Dkt. 108).  Two months after its first order, the court ultimately granted defendants' motion to amend the complaint.  *C.F. v. Capistrano Unified Sch. Dist.*, 656 F. Supp. 2d 1190 (C.D. Cal. September 15, 2009), *aff'd sub nom. C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.,* 654 F.3d 975 (9th Cir. 2011).

Because this court does not interpret the Ninth Circuit authority to require such a circuitous result, and because applying such a rigid rule likely would be inefficient, the court proceeds with the analysis laid out above.  The court next considers whether plaintiffs have established "good cause" to amend the complaint under Rule 16.

### 2.   Good Cause under Rule 16

Plaintiffs ask for leave to amend their *Monell* claims (i.e., counts 1–2 and 7–8).  Mot. Am. TAC [*Monell*] AT 3–4; *see also* PFAC.  More specifically, plaintiffs' proposed amended fourth complaint seeks to amend claim 1, which is then incorporated by reference into claims 2, 7, and 8, in the following ways: the allegation of the County's "failure to enforce" its policies is amended to allege that the policies themselves are deficient, PFAC ¶ 52; all other allegations against the County remain, although the proposed amendment includes additional factual allegations to support claims that the County failed to train its workers, *id.* ¶ 53, failed to monitor and review its workers, *id.* ¶ 54, and that these failures constitute deliberate indifference, *id.* ¶ 55.  Plaintiffs also ask to delete claim 13 brought by Cornacchioli against the County, *id.* at 4–5, and defendants agree.  Opp'n Mot. Am. TAC [*Monell*] AT 5 n.1.  The court grants this request based on the parties' stipulation.  Plaintiffs finally ask to "correct some minor items" in the complaint, including: the addition of Placer County Counsel's Office as a party; the correction

of the date when plaintiffs received an FCS investigative report; and the "minor adjustment" of some of the damages numbers. *Id.* at 4–5.

Plaintiffs support their proposed changes to the *Monell* claims on the grounds that newly acquired evidence, acquired principally from the depositions of defendants Sutton and Myers, establishes more widespread violations of County policies. *Id.* at 8–11. Plaintiffs also assert that evidence acquired through deposing FCS training coordinator Jennifer Cook and County attorney Roger Coffman establishes the County's inadequate training. *Id.* at 11–15. Although Cook and Coffman both were deposed multiple times—first in July 2016 and then in September 2016—the more recent depositions elicited "more detail" than was possible to obtain earlier. *Id.* at 15. In response, defendants argue plaintiffs were not diligent in conducting depositions at an earlier time during the discovery period, Opp'n Mot. Am. TAC [*Monell*] at 1; plaintiffs had information about FCS training as early as January 2014 and should have moved to amend much sooner, at least sooner after the July depositions of Cook and Coffman, *id.* at 4–6; and the court has twice dismissed *Monell* claims contained in the prior amended complaints, *id.* at 3.

Here, the court finds good cause to allow plaintiff's amendment of the *Monell* claims after examining the court's previous order regarding these claims. In the court's prior order, the court determined plaintiffs failed to allege facts sufficient to establish some "pattern, custom, or practice" that could provide the basis for either a failure to train or a failure to enforce theory under *Monell*. Order Sept. 1, 2015 at 8. With their proposed fourth amended complaint here, however, plaintiffs aim to address these shortcomings. Plaintiffs have taken each of the allegations the court deemed insufficient in its prior order and added paragraphs of factual allegations to support each of their theories that the County established policies, practices, and procedures that are constitutionally deficient, PFAC ¶ 52; failed to adequately train its FCS workers, *id.* ¶ 53; and failed to monitor and review the child case referral process, *id.* ¶ 54. As a basis for these changes, plaintiffs rely heavily on information acquired through recent discovery, especially the depositions of Sutton and Myers. Mot. Am. TAC [*Monell*] at 4. The court finds

1  plaintiffs were sufficiently diligent in pursuing discovery and in conducting these depositions.

2  Plaintiffs have established good cause.

3  　　　　The court next considers whether amendment is permissible under Rule 15.

4  　　　　3.　　　Amendment under Rule 15

5  　　　　As noted above, a court need not grant leave to amend where there is "undue

6  delay," "bad faith," "undue prejudice to the opposing party," or "futility of amendment." *Foman*,

7  371 U.S. at 182.  There exists a presumption under Rule 15(a) in favor of granting leave to

8  amend, and it is the burden of the party opposing amendment to show prejudice or a "strong

9  showing" of any of the remaining *Foman* factors.  *Eminence Capital*, 316 F.3d at 1052.  The

10 court considers each of those factors in turn.

11 　　　　a)　　　Undue Prejudice

12 　　　　As noted, "it is the consideration of prejudice to the opposing party that carries the

13 greatest weight." *Id.*  The court considers it first here.

14 　　　　Defendants argue they would be prejudiced in two ways if plaintiffs are granted

15 leave to amend.  First, given that discovery is now closed, defendants would not be able to

16 conduct additional discovery on plaintiffs' new claims.  Opp'n Mot. Am. TAC [*Monell*] at 8.

17 Second, granting the motion would cause prejudice by "ratcheting up their defense costs on issues

18 that could have, and should have, been resolved much earlier in the pleadings." *Id.*

19 　　　　Here, because the court grants plaintiffs' request to continue the trial date and

20 discovery period, the court rejects defendants' first argument as moot.  As to the second

21 argument, the court finds that increased litigation costs, while an important consideration, are not

22 sufficient to establish undue prejudice in this case.  *See, e.g., In re Fritz Companies Securities*

23 *Litig.*, 282 F. Supp. 2d 1105, 1109–10 (N.D. Cal. 2003) (increased motion practice costs

24 insufficiently prejudicial where plaintiffs did not cause delay); *see also Tyco Thermal Controls*

25 *LLC v. Redwood Indus.*, 2009 WL 4907512, at *3 (N.D. Cal. Dec. 14, 2009) ("Neither delay

26 resulting from the proposed amendment nor the prospect of additional discovery needed by the

27 non-moving party in itself constitutes a sufficient showing of prejudice.").  Defendants have

28 failed to sufficiently establish prejudice, and this factor favors the Rule 15 amendment.

b)    <u>Undue Delay</u>

Defendants argue that delay in filing the current motion is unjustified.  Defendants highlight the fact that plaintiffs informed them of plans to amend the *Monell* claims as early as August 12, 2016, long before plaintiffs filed their first motion to amend the third amended complaint or the instant motion.  Opp'n Mot. Am. TAC [*Monell*] at 7.  Plaintiffs respond that they "could not have brought this motion in good faith until they had completed sufficient discovery," citing the several depositions conducted in September.  Mot. Am. TAC [*Monell*] at 6.  Even though plaintiffs may have seen the need to amend the complaint and alerted defendants of that fact over a month before they moved to amend, plaintiffs' motion here is not untimely by virtue of that fact.  That plaintiffs waited to complete underlying discovery, including the depositions upon which the proposed amendments rely, did not cause undue delay, and defendants have failed to make the necessary "strong showing" of this *Foman* factor.  This factor favors the Rule 15 amendment.

c)    <u>Bad Faith</u>

Defendants do not argue that this motion is brought in bad faith, and the court has no reason to believe bad faith is present.  This factor favors the Rule 15 amendment.

d)    <u>Futility</u>

Defendants do not argue that plaintiffs' proposed amendments are futile.  Moreover, plaintiffs' proposed amendments are offered specifically to address the bases for dismissing the claims in the court's prior order.  *See* Order Sept. 1, 2015.  This factor favors Rule 15 amendment.

D.    <u>Conclusion</u>

The court finds plaintiffs have adequately established good cause for permitting amendment under Rule 16 and defendants have failed to overcome the presumption in favor of amendment under Rule 15.  As a result, the court GRANTS plaintiffs' motion for leave to amend the *Monell* claims of the third amended complaint.

/////

/////

16

IV.    MOTION FOR LEAVE TO AMEND NIED/IIED CLAIMS

The same standards reviewed above apply to this motion as well.

A.    Procedural Background

As previously stated, in their second amended complaint dated September 30, 2015, plaintiffs alleged four counts of IIED and NIED on behalf of Linda Clayton.  SAC ¶¶ 256—83.  The court dismissed plaintiffs' IIED and NIED claims on behalf of Linda Clayton with leave to amend in an order dated March 22, 2016.  ECF No. 34.  Plaintiffs filed a third amended complaint on April 5, 2016.  ECF No. 38.  The third amended complaint did not include any claims on behalf of Linda Clayton.  *Id.*

On July 28, 2016, plaintiffs filed a motion to amend their third amended complaint to name Linda Clayton as a plaintiff again, to allege defendants caused Linda Clayton intentional infliction of emotional distress and negligent infliction of emotional distress.  Mot. Am. TAC [NIED] at 1–2.  Defendants oppose plaintiffs' motion, Opp'n Mot. Am. TAC [NIED], and plaintiffs replied, Reply Mot. Am. TAC [NIED].

B.    Discussion

This court dismissed Linda Clayton's IIED claim because plaintiffs did not allege sufficient facts to "show how defendants became aware of the presence of anyone other than the person to whom the call [i.e. Akey] was directed."  Order March 22, 2016 at 2.  In other words, plaintiffs did not sufficiently allege that defendants' actions were intentional.  The court dismissed Linda Clayton's NIED claim because plaintiffs did not allege in the complaint that Linda Clayton overheard the phone call; rather, plaintiffs "allege[d] little more than [Linda Clayton] experiencing emotional hurt upon seeing Ms. Akey in anguish and shock."  *Id.* at 3.  As such, the court found plaintiffs did "not sufficiently allege[ ] the requisite level of seriousness for an NIED claim."  *Id.*

Plaintiffs contend the court should allow them to amend their third amended complaint because "the recent depositions of Rachel Akey, Ryan Cornacchioli and Linda Clayton" provide information that allows plaintiffs to cure these defects.  *See* Mot. Am. TAC [NIED] at 4.  The new facts are as follows: (1) "Rachel Akey answered the call from Sutton . . .

17

IV.    MOTION FOR LEAVE TO AMEND NIED/IIED CLAIMS

The same standards reviewed above apply to this motion as well.

A.    Procedural Background

As previously stated, in their second amended complaint dated September 30, 2015, plaintiffs alleged four counts of IIED and NIED on behalf of Linda Clayton.  SAC ¶¶ 256—83.  The court dismissed plaintiffs' IIED and NIED claims on behalf of Linda Clayton with leave to amend in an order dated March 22, 2016.  ECF No. 34.  Plaintiffs filed a third amended complaint on April 5, 2016.  ECF No. 38.  The third amended complaint did not include any claims on behalf of Linda Clayton.  *Id.*

On July 28, 2016, plaintiffs filed a motion to amend their third amended complaint to name Linda Clayton as a plaintiff again, to allege defendants caused Linda Clayton intentional infliction of emotional distress and negligent infliction of emotional distress.  Mot. Am. TAC [NIED] at 1–2.  Defendants oppose plaintiffs' motion, Opp'n Mot. Am. TAC [NIED], and plaintiffs replied, Reply Mot. Am. TAC [NIED].

B.    Discussion

This court dismissed Linda Clayton's IIED claim because plaintiffs did not allege sufficient facts to "show how defendants became aware of the presence of anyone other than the person to whom the call [i.e. Akey] was directed."  Order March 22, 2016 at 2.  In other words, plaintiffs did not sufficiently allege that defendants' actions were intentional.  The court dismissed Linda Clayton's NIED claim because plaintiffs did not allege in the complaint that Linda Clayton overheard the phone call; rather, plaintiffs "allege[d] little more than [Linda Clayton] experiencing emotional hurt upon seeing Ms. Akey in anguish and shock."  *Id.* at 3.  As such, the court found plaintiffs did "not sufficiently allege[ ] the requisite level of seriousness for an NIED claim."  *Id.*

Plaintiffs contend the court should allow them to amend their third amended complaint because "the recent depositions of Rachel Akey, Ryan Cornacchioli and Linda Clayton" provide information that allows plaintiffs to cure these defects.  *See* Mot. Am. TAC [NIED] at 4.  The new facts are as follows: (1) "Rachel Akey answered the call from Sutton . . .

on 'speaker' mode;" and (2) "Linda Clayton was physically next to Rachel Akey during the entire conversation between Sutton and Akey." *Id.* at 4–5. Plaintiffs also state "[d]efendant Gloria Sutton admitted under oath in her deposition in the prior state custody action that she heard 'grandma [Linda Clayton] . . . screaming in the background' during the phone conference with Rachel Akey." *Id.* at 5. This information in their motion would support the "intentional" element of the IIED claim.

Looking to the Ninth Circuit's three-part test to determine if good cause exists to amend the complaint, it is clear that even if plaintiffs can show they diligently assisted the court in creating a workable Rule 16 order, there were no circumstances beyond their control that prevented them from complying with the order. *See Jackson*, 186 F.R.D. at 608; *Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 687 (E.D. Cal. 2009). Unlike with plaintiffs' *Monell* claims, the deposition testimony referenced by plaintiffs here comes from their own depositions. None of the testimony should have come as a surprise to plaintiffs, and it does not justify plaintiffs' noncompliance with the court's prior order.

As for Gloria Sutton's "admission" in her deposition in the prior state custody action, that deposition occurred before this action was filed in October 2014, as plaintiffs are well aware. *See* Reply Mot. Continue at 3. Plaintiffs had ample opportunity to review that deposition testimony and incorporate information from it into their complaint, if they so wished.

C.    Conclusion

For the foregoing reasons, plaintiffs' motion to amend to add claims of IIED and NIED on behalf of Linda Clayton is DENIED.

The court next considers plaintiffs' fourth and final motion to reconsider rulings made by the magistrate judge.

V.    MOTION FOR RECONSIDERATION

A.    Procedural Background

Plaintiffs move for reconsideration of two of the magistrate judges' rulings issued by order on October 3, 2016. Mot. Reconsider; Order Oct. 3, 2016, ECF No. 72. The magistrate judge's first ruling denied plaintiffs' motion to compel Placer County to re-review the

approximately 470 documents that the magistrate judge ordered produced on May 6, 2016.  Mot. Compel, ECF No. 67; Order May 6, 2016, ECF No. 47.  The magistrate judge's second ruling granted in part defendants' motion to compel plaintiffs to compensate defendants for Akey's failure to appear at a mental health examination.  Jnt. Statement, ECF No. 66.  Plaintiffs filed the current motion for reconsideration on October 10, 2016.  Mot. Reconsider.  Defendants opposed, Opp'n Mot. Reconsider, and plaintiffs replied, Reply Mot. Reconsider.

B.    Standard

Federal Rule of Civil Procedure 72(a) directs district judges to consider timely objections to nondispositive pretrial orders issued by magistrate judges and to "modify or set aside any part of the order that is clearly erroneous or is contrary to law."  *See also* Local Rule 303(f); 28 U.S.C. § 636(b)(1)(A).  "A finding is clearly erroneous when although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 622 (1993) (internal quotation marks omitted) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  "[R]eview under the 'clearly erroneous' standard is significantly deferential . . . ." *Id.* at 623.  In contrast, the "contrary to law" standard allows "independent, plenary review of purely legal determinations by the magistrate judge." *Estate of Stephen E. Crawley v. Robinson*, No. 13-02042, 2015 WL 3849107, at *2 (E.D. Cal. June 22, 2015).  "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* (quoting *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553, 556 (D. Minn. 2008)).

In reviewing a motion for reconsideration, the district court "may not simply substitute its judgment for that of the deciding court." *Grimes v. City of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).  "To succeed [on a motion for reconsideration], a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Enriquez v. City of Fresno*, No. 10-0581, 2011 WL 1087149, at *1 (E.D. Cal. Mar. 23, 2011).  Furthermore, when filing a motion for reconsideration, a party must show "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior

19

motion, or what other grounds exist for the motion." Local Rule 230(j)(3). "A motion for reconsideration 'may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

    C.    <u>Discussion</u>

        1.    <u>Order Denying Re-Review</u>

        The magistrate judge denied plaintiffs' motion to compel Placer County to re-review what the parties refer to as the "*Monell*" documents. Jnt. Statement at 1, ECF No. 67-1; Order May 6, 2016. In a prior order, the magistrate judge ordered production of these documents, specifically requiring defendants to "expeditiously produce what the parties refer to as 'Level III and E/R Referrals' for a period of 12 months of plaintiffs' choice." Order May 6, 2016 at 1. As the parties explain:

> The Referral is documentation of an alleged complaint of abuse or neglect, and is approximately 5–8 pages. If an investigation is conducted, then an "Investigative Narrative" is prepared, which is also approximately 5–8 pages. Counsel discussed that these documents have a heading called "Differential Response Path" with four different possible types of action enumerated I, II, III or "E/R." The types identify the level of response needed, with "E/R" designating that an emergency response is required. Plaintiffs determined that Referrals with a designation of "III" or "E/R" would indicate the CPS case files that would contain the most pertinent information for the *Monell* claims.

Jnt. Statement at 2 n. 1. Although the County originally estimated there would be about 350 Level III/ER Referrals per year, defendants identified a total of 470 responsive referrals during plaintiffs' requested period. *Id.* at 3. In order to find cases similar to that of N.D., subsequent correspondence between the parties further limited the search to only Level III/ER Referrals where "the child was removed from the custody of the parent(s) without a court order." *Id.* Defense counsel arranged for the interim Assistant Director of the Department of Child Support Services, Eric Branson, to review the documents, and defendants ultimately produced only seventeen Referrals. *Id.* As a result of the limited production, plaintiffs moved to "compel Defendant Placer County to ha*ve defense counsel, not Defendant Placer County*, re-review the

approximately 470 documents/files." Mot. Compel (emphases in original). Plaintiffs were concerned about the competence of a non-attorney to conduct the review and, more specifically, of the potential bias of Eric Branson, who works for Placer County and is a supervisor of Myers. Jnt. Statement at 3–4. Plaintiffs argued before the magistrate judge that only an attorney can conduct such a review in these circumstances and moved for re-review of the documents by defendants' counsel. Mot. Compel at 5–7; Mot. Reconsider at 3–6.

The magistrate judge denied plaintiffs' request to compel re-review on October 3, 2016. Order Oct. 3, 2016. The magistrate judge set forth the reasons for her determination on the record. *See* Hr'g Tr. Sept. 30, 2016 ("Transcript"), ECF No. 85. First, the magistrate judge pointed to the lack of evidence showing defendants were inappropriately withholding documents. *Id.* at 20:22–25, 23:2–6. ("I just don't feel like I have sufficient information to infer that somehow there's [sic] responsive documents that are still in the care and custody of the county."). Second, the magistrate judge pointed to the lack of legal authority establishing that something greater was required of defense counsel. *Id.* at 21:4–6. ("I am satisfied that the process by which [defense counsel] describes in the joint statement is sufficient.").

Plaintiffs argue the magistrate judge's ruling was wrong "as a matter of law." Thus, the court here performs an "independent, plenary review" of the legal determination that a non-attorney can perform the review in these circumstances. *Estate of Stephen E. Crawley*, 2015 WL 3849107, at *2. Because the court must ask whether the magistrate judge "fails to apply or misapplies relevant statutes, case law, or rules of procedure," *id.*, the analysis here starts with the underlying Federal Rule of Civil Procedure.

Under Federal Rule of Civil Procedure 26(g), "[e]very disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name." Fed. R. Civ. P. 26(g). "By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

/////

/////

21

(B) with respect to a discovery request, response, or objection, it is:

      (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

      (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

      (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

*Id.* The plain rule requires only that an attorney represent that the discovery response is warranted by existing law, objections are not interposed for an improper purpose, and discovery practices are not unreasonable. The Advisory Committee notes further clarify that the "reasonable inquiry" requirement "is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances." Fed. R. Civ. P. 26, 1983 Advisory Committee Notes. Moreover, the "reasonable inquiry" requirement may be satisfied where a lawyer relies on the representations of the client so long as the lawyer has made a "reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." *Id.*; *see also Davis v. Lakeside Motor Co.*, No. 3:10-CV-405 JD, 2014 U.S. Dist. LEXIS 92091, at *16 (N.D. Ind. July 7, 2014) (attorney not subject to sanctions under Rule 26(g) for reasonably relying on client's incorrect representations). Taken together, the language of the rule and the advisory committee notes suggest that the certifying attorney need not personally review all materials from which a party crafts the substance of a "response" under Rule 26(g).

      Plaintiffs' cited cases do not require a different interpretation. Mot. Reconsider at 3. Plaintiffs first point to ostensibly helpful language from *Gerke v. Travelers Cas. Ins. Co. of Am.*, 289 F.R.D. 316, 322 (D. Or. 2013) ("[Lawyers'] duty cannot be fully met if lawyers certify that all discoverable documents from a file have been produced without ever having reviewed the file[.]"). However, the facts of that case are too dissimilar to be persuasive here. First, *Gerke* involved production of expert disclosure materials, some of which are protected under the

attorney-client privilege under Rule 26(b), and the court there held an attorney must review those materials prior to either including them in the production or listing them in the list of privileged documents. *Id.* at 323. Those facts are not present here as the FCS case files are not identified as privileged material. Second, *Gerke* involved production of materials for in camera review by the court, *id.* at 318, which imposed on the attorneys, as the court put it, a "heightened" duty to review the materials for themselves beforehand. *Id.* at 323. Here, in camera review was not ordered, and there is no similar basis for such a "heightened" duty. Thus, even assuming that *Gerke* were binding authority here, which it is not, the court finds the facts of *Gerke* are too dissimilar to bear on the instant case.

Plaintiffs' cases referenced in their argument before the magistrate judge similarly fail to support plaintiffs' position that personal review by the attorney is necessary. Jnt. Statement at 5. Plaintiffs pointed to *Cardenas v. Dorel Juv. Group, Inc.*, a case that considered trial counsel's obligation to review materials from the client's in-house counsel, who had in turn relied on paralegals to conduct the review. CV.A.04-2478 KHV-DJW, 2006 WL 1537394, at *1 (D. Kan. June 1, 2006). The court wrote that "[t]rial counsel have a duty to exercise some degree of oversight over their clients' employees to ensure that they are acting competently, diligently, and ethically in order to fulfill their responsibility to the Court and opposing parties," but the court never required trial counsel to conduct the review himself in filing a response. *Id.* at *7. Instead, trial counsel had an obligation to communicate with the client to identify who has responsibility for the documents subject to the discovery requests and ultimately review the documents the client prepared for submission. *Id.* If anything, this case supports defendants' argument that their review was sufficient, because defense counsel here repeatedly communicated with Branson and conducted a review of the documents Branson selected. Jnt. Statement at 9–10. *Cardenas* does not require anything more. Similarly the final case cited by plaintiffs, *Goold v. Hilton Worldwide*, 2014 WL 4968268 (E.D. Cal. 2014), only stands for the unremarkable proposition already discussed above that when an attorney signs a discovery response she is certifying that a "reasonable inquiry" has been made. *Id.* at *2. What that "reasonable inquiry"

requires is the focus of the parties' issue here, and plaintiffs have not offered any persuasive authority to support their interpretation of the rule.

In sum, an attorney need not, as a matter of law, review all documents in forming a response certified under Rule 26(g). The attorney is permitted in certain circumstances to rely on the skill and experience of paralegals or qualified client employees. The magistrate judge's determination was not wrong "as a matter of law." The court denies plaintiffs' motion to reconsider the magistrate judge's first ruling challenged here.

## 2. Order Granting in Part Payment of Costs

The magistrate judge's second ruling granted in part defendants' motion to compel plaintiffs to compensate defendants for Akey's failure to appear at a mental health examination. Order Oct. 3, 2016; Jnt. Statement. Defendants' motion was based on an invoice for $3,200 defendants received from their medical expert for an entire eight-hour day due to Akey's last minute cancellation. Jnt. Statement at 3. Plaintiffs asserted Akey was too ill to attend and thus had a reasonable excuse for her absence. *Id.* Plaintiffs further argued that Federal Rule of Civil Procedure 37, which defendants cited, only addresses the willful, rather than the excusable, failure to attend. *Id.* at 3, 8. The magistrate judge ordered plaintiffs to pay one half of the bill, $1,600, excluding any attorneys' fees. Order Oct. 3, 2016 at 3. Here again, the magistrate judge set forth the reasons for her determination on the record. *See* Transcript. After noting the court's discretion, the magistrate judge found costs justified because Akey missed an anticipated full-day appointment. *Id.* at 12:18–24. The magistrate judge relied on the absence of any declaration from either Akey or a doctor confirming her sickness to find Akey's absence was not excused. *Id.* at 13:4–11 ("I'm not suggesting that anyone's being untruthful, but there's just [not] enough for me to saddle the county with all of those costs.").

In their motion for reconsideration of the magistrate judge's order, plaintiffs argue there is no legal basis for charging plaintiffs; that it is inherently unreasonable for defendants' expert to charge for a full day (eight hours); and that it is unlikely defendants' expert could not have mitigated the damage, such as by scheduling other appointments. Mot. Reconsider at 6–7. In response, defendants argue the medical examination, as compelled by the court, was scheduled

for eight hours and that Federal Rule of Civil Procedure 37(b)(2)(B) provides ample basis for the magistrate judge's imposition of costs. Opp'n Mot. Reconsider at 4–5.

Because plaintiffs challenge the magistrate judge's order for lacking any legal basis and for being unreasonable, the court here reviews the order under the "independent, plenary" and "clearly erroneous" standards of review. *See* Fed. R. Civ. P. 72(a); Local Rule 303(f); 28 U.S.C. § 636(b)(1)(A).

Taken together, Federal Rules of Civil Procedure 35 and 37 provide ample support for the magistrate judge's order. Federal Rule of Civil Procedure 35 permits the court to "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). Federal Rule of Civil Procedure 37 further permits the court to impose sanctions for failure to comply with the court's order. More specifically, Rule 37(b)(2)(B) permits sanctions for "not producing a person for examination" whose appearance is required under Rule 35(a) unless the disobedient party shows (1) "it cannot produce the other person," Fed. R. Civ. P. 37(b)(2)(B); (2) "the failure was substantially justified," Fed. R. Civ. P. 37(b)(2)(C); or (3) "other circumstances make an award of expenses unjust," *id.* At hearing, the magistrate judge impliedly found plaintiffs did not comply with the court's prior order and that plaintiffs had not shown the failure was substantially justified. Transcript at 12:18–24, 13:4–11. Because there was a legal basis for sanctions under Rules 35 and 37, the magistrate judge's order was not contrary to law.

Nor have plaintiffs shown the magistrate judge's determination was clearly erroneous. Although plaintiffs' counsel learned Akey was not feeling well at 5 p.m. on August 25, 2016, plaintiffs' counsel only informed defense counsel of the cancellation after 6 a.m. on the morning of the appointment on August 26, 2016. Transcript at 12:10–12. This fact undermines plaintiffs' argument that the expert could have mitigated damages and scheduled appointments later that same day; it also supports defendants' request for an eight-hour billing, only half of which plaintiffs were ordered to pay. Transcript at 12:25–13:1. In addition, as the magistrate judge noted at hearing, plaintiffs had not provided a declaration that would support the court's finding a substantial justification for the missed appointment. *Id.* at 13:4–11. Although plaintiffs

25

finally submitted such a declaration along with their reply to their current motion, *see* Akey Decl., ECF No. 88-1, "[a] motion for reconsideration may not be used to . . . present evidence for the first time [that] could reasonably have been raised earlier in the litigation." *Marlyn Nutraceutical*, 571 F.3d at 880 (internal quotations marks omitted) (quoting *Kona Enters., Inc.*, 229 F.3d at 890). Because the magistrate judge's basis for imposing sanctions was reasonable, as was the amount of sanctions imposed as well, the court will not reconsider the magistrate judge's determination here. The court denies plaintiffs' motion for reconsideration of the magistrate judge's order in this respect.

The court denies both of plaintiffs' motions for reconsideration.

VI.     <u>CONCLUSION</u>

The court GRANTS plaintiffs' motion to continue the trial date. The new schedule for the balance of the case is as follows: the period for discovery shall be extended to July 31, 2017; disclosure of expert witnesses is due by September 1, 2017 and supplemental disclosure of expert witnesses is due by September 22, 2017; the period for expert discovery shall be completed by September 29, 2017; all dispositive motions shall be heard by November 3, 2017; the Final Pretrial Conference is reset for February 23, 2018 at 10:00 a.m., with the Joint Pretrial Statement due by February 2, 2018; and the Jury Trial date is reset for April 9, 2018 at 9:00 a.m., with trial briefs due by March 26, 2018. In light of this new schedule, the parties shall meet and confer and within fourteen days of the filed date of this order notify the court of their position(s) with respect to the pending motions for summary judgment: should the court hear those motions on the date currently set, or should the motions be denied without prejudice to renewal after the close of the newly extended discovery period?

The court GRANTS plaintiffs' motion to amend the *Monell* claims. A fourth amended complaint shall be filed within fourteen days of the date this order is filed.

The court DENIES plaintiffs' motion to amend the NIED/IIED claims.

/////

/////

/////

26

The court DENIES plaintiffs' motion to reconsider the magistrate judges' rulings. This order resolves ECF No. 51, 69, 76, and 80.

IT IS SO ORDERED.

DATED: May 8, 2017.

_____
UNITED STATES DISTRICT JUDGE