UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHAEL AKEY, et al., | No. 2:14-cv-02402-KJM-DB |
| Plaintiffs, | |
| v. | ORDER |
| PLACER COUNTY, et al., | |
| Defendants. | |

The parties' post-trial motions are before the court. Plaintiffs move for attorney's fees after a partially favorable jury verdict, Mot. for Fees, ECF No. 229; defendants move to amend the judgment, for a new trial and to stay the judgment pending resolution of these post-trial motions, Post-Trial Mot., ECF No. 233-1. On July 12, 2019, the court heard oral argument on the motions. After consideration of the parties' briefing and arguments at hearing, and good cause showing, the court GRANTS defendants' motion in part. The jury verdict, and corresponding judgment, are VACATED and the court will set this matter for retrial of all issues, if the case does not settle following the court's holding of a settlement conference as agreed to by the parties.

///

///

///

1

I. BACKGROUND

    A. Factual Background

Detailed facts of this case are set forth in the court's summary judgment order. *See* MSJ Order, ECF No. 155. The court summarizes key facts here as relevant for context, citing to the summary judgment order for efficiency's sake, to the extent the summary judgment record is consistent with the evidence elicited at trial.

This case involves a custody battle over minor plaintiff, N.D., who at all relevant times, was a three-year-old boy living with his mother, plaintiff Rachael Akey, and his stepfather Ryan Cornacchioli. MSJ Order at 2. On September 12, 2013, N.D.'s school reported to Placer County Child Protective Services ("CPS") an alleged choking incident that N.D. reported one day prior. *Id.* CPS Officer Gloria Sutton was first to investigate. *Id.* After her investigation, Officer Sutton produced a report concluding the choking allegations were "substantiated." *Id.* at 4. In the interim, prior to releasing her report, and aware of the tumultuous child custody proceedings surrounding N.D., Sutton devised a "safety plan," which temporarily modified a recently issued custody order and provided for N.D. to stay with his father, Cameron Dupree, during the pendency of a full investigation. *Id.* Sutton phoned Akey seeking her consent to the plan, but Akey refused. *Id.* Sutton's supervisor, Scott Myers, also spoke with Akey attempting to obtain her consent to the safety plan. *Id.* The parties disputed whether Akey, at some point, affirmatively consented to the safety plan, and this issue was tried to the jury. Myers and Sutton, believing Akey had given her consent, abstained from creating a formal, written "exigency" determination, a formality required when removing a child without parental consent. *Id.*

With N.D. in his care under the safety plan, Dupree filed an ex parte application in family court to obtain sole custody during the pendency of the investigation. *Id.* at 5. On September 20, 2013, the family court granted Dupree's application and temporarily awarded him sole custody. *Id.* On October 2, 2013, the family court conducted a full evidentiary hearing, and, in March 2014, that court issued its final determination that "no abuse" had occurred. *Id.* The family court then reinstated the prior custody arrangement under which Akey had primary custody over N.D. *Id.*

B. Procedural Background

Plaintiffs' operative fourth amended complaint made out twenty-six claims against defendants.[1] *See generally* Compl., ECF No. 109. On August 14, 2018, the court denied plaintiffs' motion for summary judgment, but and granted defendants' motion in part while also denying it in part, leaving the following six claims based on 42 U.S.C. § 1983 to proceed to trial: claims 1 and 7 (*Monell* claims), and claims 3, 5, 9 and 11 (procedural due process claims). MSJ Order at 25; *see also* Final Pretrial Order, ECF No. 174, at 7–8.

After a ten-day jury trial, the jury returned a unanimous verdict in plaintiffs' favor on five of the six claims. Verdict, ECF No. 221. The jury awarded Akey $145,000 in compensatory damages on her *Monell* claim, $1.00 in nominal damages on her procedural due process claim against Sutton and $500 on her procedural due process claim against Myers. *Id.* at 2, 6, 8. As to N.D., the jury awarded $50,000 in compensatory damages and $500,000 in punitive damages on his *Monell* claim, as well as $500 in compensatory damages on his procedural due process claim against Myers. *Id.* at 4–5, 12. The court entered judgment accordingly. ECF No. 224.

On May 21, 2019, plaintiffs moved for attorney's fees under 42 U.S.C. § 1988(b) in light of the favorable verdict. Mot. for Fees at 3–11. Defendants oppose the motion, Fees Opp'n, ECF No. 240, and plaintiffs have replied, Fees Reply, ECF No. 242.

On May 31, 2019, defendants moved to amend the judgment, arguing it was manifest error for the court allow punitive damages on N.D.'s *Monell* claim. Post-Trial Mot. at 3–5. Defendants also move for a new trial based on the purported error, which they argue produced an inconsistent verdict. *Id.* at 5–6. Finally, defendants ask the court to stay the judgment pending resolution of the underlying motions and any forthcoming appeal. *Id.* at 6–7. Plaintiffs have opposed, Post-Trial Opp'n, ECF No. 239, and defendants have replied, Post-Trial Reply, ECF No. 243. Given the need for retrial, the court need only address the motions to the extent they require such a result.

---

[1] Although the fourth amended complaint includes claims on behalf of plaintiff Ryan Cornacchioli, the court dismissed him as a party on summary judgment. *See* MSJ Order at 25.

3

II. DISCUSSION

A. Defendants' Motion to Amend the Judgment

Under Federal Rule of Civil Procedure 59(e), a party may move to alter or amend a judgment within 28 days after entry of judgment. Because the language of Rule 59(e) is sparse, the Ninth Circuit has taken this to mean "the district court enjoys considerable discretion in granting or denying the motion." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc) (per curiam)). However, granting a Rule 59(e) motion is generally seen as "an extraordinary remedy which should be used sparingly." *Id.* (citation omitted).

A motion under Rule 59(e) is typically premised on either of the following grounds: "(1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Id.* To warrant reconsideration based on clear error, the question before the court cannot be debatable; it must be obvious. *Saldana v. Spearman*, No. 13-cv-02773-YGR (PR), 2015 WL 4197856, at *1 (N.D. Cal. July 10, 2015) (citing *McDowell*, 197 F.3d at 1256).

Defendants contend the court committed clear error by permitting punitive damages on N.D.'s *Monell* claim against the County, and specifically by including a question regarding punitive damages on the verdict form following the question whether N.D. had satisfied his *Monell* claim. Post-Trial Mot. at 3–5; Verdict at 5. Defendants also argue that despite their failure to object to the purported error contained in the verdict form, Federal Rule of Civil Procedure 51(d)(2) permits the court to consider plain error, even if not preserved by objection during trial, if the error affects a party's substantial rights. *Id.* at 4. Plaintiffs concede it was error to include punitive damages on the verdict form in connection with N.D.'s *Monell* claim; nevertheless, plaintiffs argue defendants fail to satisfy the four-part test necessary to correct a verdict under Rule 51(d)(2). Post-Trial Opp'n at 2–3 (citing *United States v. $11,500.00 in United States Currency* (hereinafter *U.S. Currency*), 869 F.3d 1062, 1075 (9th Cir. 2017)). In

4

reply, defendants argue *U.S. Currency* and its progeny are inapplicable here, but rather apply only on appeal, where a district court lacks the opportunity to correct its error unless upon remand from the appellate court. Post-Trial Reply at 1–3. Even if the test were applicable, defendants contend it is easily satisfied because plaintiffs concede the first three steps, and the fourth step—fairness, integrity or public reputation of judicial proceedings—is met because allowing the punitive award to stand would constitute a windfall. *Id.* at 2–3.

        Upon consideration, the court finds it was clear error to allow the jury to award punitive damages on N.D.'s *Monell* claim by providing a place to do so on the verdict form, even though the court properly instructed the jury on the matter. *See* Final Jury Instr., ECF No. 210, at 26. As an initial matter, defendants' contention that Rule 51(d)(2)'s four-part analysis applies only at the appellate level is unavailing. For one, the plain language of Rule 51(d)(2) places no limitation on a district court's ability to consider plain error, as it broadly permits "a court" to consider error in the jury instructions or verdict form.[2] Second, district courts have consistently applied Rule 52(d)(2)'s "plain error" doctrine. *See, e.g.*, *Estate of Morad v. City of Long Beach*, No. CV 16-6785-MWF (AJWx), 2018 WL 6118429, at *5 (C.D. Cal. Nov. 1, 2018) (applying Rule 51(d)(2)'s "plain error" standard, as articulated in *C.B. v. City of Sonora*, 769 F.3d 1005, 1016 (9th Cir. 2014) (en banc), to jury instruction challenge); *Conti v. Corp. Servs. Grp., Inc.*, 30 F. Supp. 3d 1051, 1074 (W.D. Wash. 2014) (applying Rule 51(d)(2) analysis), *aff'd*, 690 F. App'x 473 (9th Cir. 2017); *Feeley v. City of New York*, 362 F. Supp. 3d 153, 160 (S.D.N.Y. 2019) (same).

        Nonetheless, even under Rule 51(d)(2)'s stringent "plain error" standard, the court's oversight in providing the jury with a verdict form allowing an award of punitive damages on N.D.'s *Monell* claim amounts to plain error. In *City of Newport v. Fact Concerts, Inc.*, the Supreme Court explicitly prohibited punitive damage awards against municipalities in 42 U.S.C.

---

[2] Although the language of Rule 51(d)(2) mentions "plain error in the instructions," not the verdict form, the Ninth Circuit has held that Rule 51 equally applies to the verdict form. *See Ayuyu v. Tagabuel*, 284 F.3d 1023, 1026 (9th Cir. 2002) ("We hold that Rule 51 includes objections to the form of the verdict as well as to any instructions about the use by the jury of the form.").

5

§ 1983 actions. 453 U.S. 247, 271 (1981). Plaintiffs concede as much, as they must. Post-Trial Opp'n at 2–3.

The fact that defendants failed to object to this error, despite multiple opportunities to do so, does not constitute waiver here. To obtain relief under Rule 51(d)(2), the error must be plain and "affect[] substantial rights." In other words, "a court's action must contravene an established rule of law and the substantial right affected must go to the very essence of the case." *Freeley*, 362 F. Supp. 3d at 160 (internal quotations, alterations omitted). Here, in light of plaintiffs' two *Monell* claims (claims 1 and 7), Placer County's potential liability for their practice of allowing oral safety plans was central to the case. At the same time, under *City of Newport*, Placer County has the right to expect it will be shielded from punitive damages should liability ultimately attach based on either claim. Given the Ninth Circuit's clearly articulated standard, that the court grant relief under Rule 51(d)(2) to "prevent a miscarriage of justice, meaning that the error seriously impaired the fairness, integrity, or public reputation of judicial proceedings," the court must afford such relief here. *C.B.*, 769 F.3d at 1019 (citation omitted).

Rule 59, on which defendants base their motion, provides the appropriate avenue of relief. When a court is faced with a jury verdict that is excessive, the proper remedy is a new trial or a new trial limited to the issue of damages. 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2815 (3d ed. 2019). However, there are other limited circumstances more closely akin to what has happened in this case, "in which it is apparent as a matter of law that certain identifiable sums included in the verdict should not have been there." *Id.* Under those circumstances, the court may reduce the damages award on its own, without running afoul of a party's constitutional right to trial by jury. *Id.*; *see Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1049 (8th Cir. 2002) ("While the traditional remedy of remittitur does require the plaintiff's consent in order to comport with the Seventh Amendment right to jury trial . . . the court's mandatory review of a punitive damages award does not implicate the Seventh Amendment." (citation omitted)); *In re Lorazepam & Clorazepate Antitrust Litig.*, 261 F. Supp. 3d 14, 17 (D.D.C. 2017) ("[W]hen it is apparent as a matter of law that certain identifiable sums were included in the verdict that should not have been there, it is appropriate for a district

6

court to enter a remittitur and correct the verdict without further jury proceedings." (quotations omitted)).

Because it is clear, as a matter of law, that N.D. is not eligible for the $500,000 punitive damages award the jury rendered on his *Monell* claim, it is within the court's discretion to strike the award without a need for further jury proceedings. Nonetheless, the court may also grant a new trial if equity so demands. *See Juneau Square Corp. v. First Wisconsin Nat. Bank of Milwaukee*, 624 F.2d 798, 806 n.11 (7th Cir. 1980) (citation omitted) ("Rule 59 gives the trial judge ample power to prevent what [s]he considers to be a miscarriage of justice. It is h[er] right, and indeed h[er] duty, to order a new trial if [s]he deems it in the interest of justice to do so."). Here, the court finds equity demands a new trial.

At hearing, plaintiffs' counsel initially argued the best course of action is to order a new trial on damages alone. When asked his position if the court viewed its only options as either striking the punitive award and upholding the remainder of the verdict or conducting an entirely new trial, plaintiffs' counsel then urged the court to order a new trial. He argued the jury had expressed its clear displeasure with the County's policies through the punitive damages award, and on retrial with the correct options before it a jury may then impose punitive damages against one or more of the individual defendants given their respective roles in carrying out those policies. In this light, failing to order a new trial would be highly prejudicial to plaintiffs' case. Defendants argued the court should not order a new trial on damages alone given the factual entanglement of questions related to liability and damages; they acknowledged it is within the court's discretion to either strike the punitive damages award or order an entirely new trial.

Having carefully considered the parties' arguments, the court will not retry the punitive damages issue alone because, as both parties effectively point out, there is significant factual overlap between the questions a jury must answer relating to liability and damages. A court should not resort to use of a partial trial unless, unlike here, "it clearly appears that the issue to be retried is so distinct and separable from others that a trial of it alone may be had without injustice." *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1133 (9th Cir. 1995) (quoting *Gasoline Products Co., Inc. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931)). Moreover, as

defendants note, at any second trial limited to punitive damages alone, the majority of witnesses from the first trial would still be required to testify on virtually the same subject matters as if on full retrial. Post-Trial Reply at 4. When there is no clear demarcation between liability and damages, as here, the court exercises its discretion and will conduct a new trial in full. *See d'Hedouville v. Pioneer Hotel Co.*, 552 F.2d 886, 897 (9th Cir. 1977) (whether to limit new trial to issue of damages is within trial court's discretion).

III. SETTLEMENT CONFERENCE PRIOR TO TRIAL RESETTING

At hearing, the court discussed with counsel the possibility of a further settlement conference before a new trial. Both counsel indicated they believed a settlement conference would be worthwhile, and both indicated their clients would waive any conflict as to the trial judge serving as the settlement judge. Accordingly, the court sets the case for settlement below.

IV. CONCLUSION

For the reasons set forth above, the court GRANTS defendants' post-trial motion, ECF No. 233, in part as set forth above. The May 1, 2019 jury verdict and May 3, 2019 judgment are VACATED and a new jury trial shall be scheduled after further consultation with the parties. The remainder of defendants' motion is DENIED as moot, as is plaintiffs' motion for attorney's fees, ECF No. 229.

The court sets a settlement conference for **November 12, 2019, at 10:00 AM** in Courtroom 3 before the undersigned. The parties are directed to submit confidential settlement conference statements to chambers seven days prior to the settlement conference using the following email address: kjmorders@caed.uscourts.gov. Counsel shall not file these statements with the Clerk of Court; however, each party shall e-file a one-page document entitled Notice of Submission of Confidential Settlement Conference Statement. They are not required to serve statements on opposing counsel, but may if they believe doing so will advance settlement discussions. Each party is reminded of the requirement that it be represented in person at the settlement conference by a principal able to dispose of the case or fully authorized to settle the matter at the conference on any terms. *See* Local Rule 270.

///

1         IT IS SO ORDERED.

2 DATED: October 10, 2019.

                                       UNITED STATES DISTRICT JUDGE